## JOHN A. CROSS *vs.* BROWN, STEESE & CLARKE.

The statute of this State which authorizes the trustee in attachment proceedings, after final judgment against the defendant, to satisfy such judgment or any part thereof to the amount of the estate attached in his hands before any suit shall be brought against him therefor, and provides that such payment shall avail for his discharge as against both plaintiff and defendant for the amount thereof, is not unconstitutional as against a non-resident defendant where a debt due to him contracted and made payable at his domicile is attached here, either as impairing the obligation of contract, or as depriving the owner of his property without due process of law.

The *situs* of a debt for the purpose of attachment by process of garnishment is at the domicile of the garnished debtor; and the rule is not varied by the fact that the debt is payable elsewhere, or that its *situs* for the purpose of taxation is at the domicile of the payee.

A resident of this State brought an action here against residents of Massachusetts by process of garnishment served on the garnishees, corporations of this State, August 13, 1889. In proceedings in insolvency in Massachusetts, had on the defendants' application filed August 12, 1889, the judge of the court of insolvency under the laws of that State conveyed the debtors' property to assignees September 4, 1889. The insolvency laws of Massachusetts provide that such assignment shall vest in the assignee all the debtor's property which he could have lawfully sold, assigned, or conveyed, or which might have been

taken on execution, "at the time of the first publication of the notice of issuing the warrant in case of voluntary proceedings." The first publication of the notice of issuing the warrant was on August 23, 1889.

*Held*, that the insolvency proceedings in Massachusetts did not affect the jurisdiction of the court of this State over the attached fund, or interfere with the plaintiff's lien of attachment ; 1, because the *situs* of the debt for the purpose of collection being in this State, the court here first acquired jurisdiction of it by the attachment made prior to the date of the first publication of the notice of issuing the warrant in the insolvency proceedings in Massachusetts ; and 2, because, as under the Massachusetts insolvency laws creditors are required to prove their debts or lose them by a discharge of the debtor from his liability therefor, and the debtor is divested of his property by operation of law, not by his own act, the insolvency proceedings there were involuntary in character, and should not have any effect given to them in this State, under the rules of comity, to the prejudice of an attaching creditor here.

A debt which is not subject to any contingency, but is payable absolutely, though at a future time, is liable to attachment.

Where a claimant to an attached fund becomes a party to the attachment suit after the plaintiff has obtained judgment against the defendant, evidence to show that the plaintiff was not entitled to maintain his action is admissible.

Interest is a mere incident to a debt arising from the debtor's use of the money after it becomes due.

Hence, where a debt is attached before it is due, the garnishee is chargeable with interest thereon from the time when it became payable.

Where the disclosure of a garnishee shows such a complicated state of affairs between himself and the principal defendant as to render it difficult if not impossible to ascertain the balance due, and further shows the existence of prior attachments for claims exceeding in the aggregate the amount of his indebtedness to the principal defendant, no order charging the garnishee can be made before the determination of the prior suits.

In such circumstances the plaintiff should ask for a continuance of his case until such prior suits are determined.

The personal estate of an insolvent debtor in the hands of his assignee, under a voluntary assignment for the benefit of creditors, is not liable to attachment.

The word "trustee" in the statutes of this State relating to attachment by process of garnishment, means one against whom an action *ex contractu* might be maintained by the defendant in the attachment suit.

Under the question of charging a garnishee in one case, prior attaching creditors in other suits cannot be summoned in for the purpose of having the validity and amount of their respective claims examined and determined therein.

It is within the discretion of the court to allow a garnishee to file a supplemental affidavit amending his disclosure, or to strike out of the affidavit irrelevant matter.

When allegations are made in connection with interrogatories filed by the plaintiff in an attachment suit, all looking to a trial in that suit of the claims of prior attaching creditors in other suits, evidence in support of such allegations ought not to be admitted.

Under the statutes of this State a debt due to a non-resident may be attached.

PETITIONS for a new trial.

*October* 28, 1895. TILLINGHAST, J. This is *assumpsit* upon two promissory notes made by the defendants, at Boston, in the State of Massachusetts, on the 9th day of April, 1889, and the 7th day of May, 1889, respectively, and payable to the order of the International Trust Company, at its place of business in said Boston, and by said International Trust Company endorsed and delivered to the plaintiff. The said International Trust Company is a Massachusetts corporation.

The writ, wherein John A. Cross, of Providence, was plaintiff, and Gideon P. Brown, of Boston, Edward Steese and Amasa Clarke, of Brookline, all in the State of Massachusetts, copartners under the firm name of Brown, Steese & Clarke, were defendants, was sued out of the Court of Common Pleas, in the County of Providence, August 13, 1889, and was served by trustee process, on the same day, upon the Lippitt Woolen Company, the Riverside & Oswego Mills and the Wanskuck Company, each being a corporation of this State, and was also further served, on August 15, 1889, by trustee process upon the assignees of said Riverside & Oswego Mills, and by sending a copy of the writ by mail to the address of each of the said defendants. At the time of the commencement of said suit and of the insolvency proceedings hereinafter mentioned, the defendants, Brown, Steese & Clarke, were creditors of said Lippitt Woolen Company, the Riverside & Oswego Mills and the Wanskuck Company. The indebtedness of the Lippitt Woolen Company was on a contract for the sale of wool, made in Boston where the wool was delivered, and where the purchase price for the same was payable when it should become due. At the time of the alleged garnishment, however, said indebtedness had not become due and payable, and did not until September 12, 1889.

Subsequently to the service of said writ on the Riverside & Oswego Mills, but on the same day, this corporation made a general asssignment of all its property to Charles D. Owen, of Rhode Island, Chester A. Braman, of the city and State of New York, and James B. Case, of Webster, in the State of Massachusetts, in trust for the equal benefit of all its credi-

tors excepting its employees, the wages of whom, for labor performed within six months prior to said assignment, not exceeding however the sum of one hundred dollars to any one person, were preferred.  January 7, 1890, the defendants appeared and pleaded the general issue, and on trial to a jury, on March 20, 1890, a verdict was rendered for the plaintiff for $41,534.27, which verdict this court, on a petition for a new trial subsequently filed, refused to disturb. Said Brown, Steese & Clarke failed in the early part of August, 1889, and on the 12th of the same month two members of the firm applied by a voluntary petition to the Judge of the Court of insolvency, in and for the county of Norfolk, Massachusetts, setting forth their inability to pay all their debts, and their willingness to assign all their estate and effects for the benefit of their creditors, and praying that such proceedings might be had as were provided by the Public Statutes of Massachusetts, cap. 157, viz., the insolvency laws of that State.

Section 46 of such chapter provides as follows :  "The assignment shall vest in the assignees all the property of the debtor, real and personal, which he could have lawfully sold, assigned, or conveyed, or which might have been taken on execution upon a judgment against him, at the time of the first publication of the notice of issuing the warrant in case of voluntary proceedings, and at the time of the first publication of notice of the filing of the petition in cases of involuntary proceedings, and shall be effectual, subject to the provisions of the following section, to dissolve any attachment on mesne process made not more than four months prior to the time of the first publication aforesaid.  The assignment shall vest in the assignee all debts due to the debtor or any person for his use, and all liens and securities therefor, and all his rights of action for goods or estate, real or personal, and all his rights of redeeming such goods or estate."

The first publication of notice of the insolvency proceedings referred to was made on August 23, 1889, and on September 4, 1889, the assignment was made by the Judge of the Court

of Insolvency, under the provisions of said law.    No assignment was made by the insolvents themselves.

The assignees of Brown, Steese & Clarke, by virtue of the assignment to them, as aforesaid, and of the provisions of said insolvency laws of Massachusetts, duly purported to sell and assign the claims of said firm against the Lippitt Woolen Company and the Wanskuck Company to Theophilus King, a citizen and resident of Massachusetts, who, as shown by the duly authenticated record, as such purchaser, and under and by virtue of section 109 of said chapter 157 of the Massachusetts statutes, brought suit in his own name in that State against the Lippitt Woolen Company on its obligation under said contract, setting forth the fact of the sale and of the purchase by him, in the writ, and recovered judgment against the Lippitt Woolen Company, notwithstanding said company appeared and fully set out in said suit the garnishment proceedings in the case now before us.

Under and by virtue of chapter 433 of the Public Laws of Rhode Island, the said King was allowed to become a party to this action as adverse claimant, which he did, setting up the insolvency laws and proceedings thereunder in Massachusetts and the assignment to him thereunder, as aforesaid, and also setting up his judgment against the Lippitt Woolen Company.    He also offered to show that this is not a suit brought in good faith by a citizen of Rhode Island for his own benefit, but that it is colorable only, and in the interest, for the benefit and in behalf of the International Trust Company, of Boston.    Bullens & Sawyer were also allowed to become a party to the suit as the claimant of all the property and estate of the defendants in the hands of the Riverside & Oswego Mills, they claiming said property by virtue of an assignment to them from the assignees in insolvency in Massachusetts of said Brown, Steese & Clarke.

The various parties served with copies of the writ, for the purpose of attaching by trustee process the defendants' property in their hands, filed disclosures in said Court of Common Pleas, and in the Common Pleas Division of the Supreme Court which took cognizance of the case after the passage of

the Judiciary Act, which disclosures will hereinafter be considered ; numerous interrogatories and cross-interrogatories were filed and answered in connection therewith ; said claimants of the property attached were fully heard, and the case as a whole was tried at great length ; and finally, after diligent consideration thereof by Rogers, J., presiding in said Division, a decision was rendered charging the said Lippitt Woolen Company as garnishee in the sum of $11,938.39, the same being the amount disclosed in its affidavit, together with interest thereon from September 12, 1889, and declining to charge the other garnishees. The case is now before us on two petitions for a new trial, one being filed by the plaintiff, and one by the said Lippitt Woolen Company, trustee, and Theophilus King, adverse claimant.

The plaintiff's petition is based upon certain alleged erroneous rulings of the court in regard to the admission and rejection of evidence ; in the admission of supplemental affidavits or disclosures by the garnishees ; in admitting said Theophilus King and Bullens & Sawyer, respectively, as claimants of the property attached and as parties to the case upon their intervening petitions therein filed ; in refusing to summon in the prior attaching creditors of the property in question ; in declining to charge the assignees of the Riverside & Oswego Mills as trustees ; and in declining to charge the Wanskuck Company and the Riverside & Oswego Mills as garnishees.

The numerous grounds of the petition of said Lippitt Woolen Company and of Theophilus King, adverse claimant, for a new trial, briefly stated, are that the Common Pleas Division erred in charging said Lippitt Woolen Company as trustee, and, even if chargeable at all, in charging it with interest on the amount disclosed ; in its rulings as to the admission and rejection of evidence, and in its rulings and decisions as to the faith and credit to be given to the record and proceedings of the Massachusetts Court of Insolvency, and also of the Superior Court of that State. We will consider both of said petitions together.

The first question which logically presents itself in con-

nection with the petition for a new trial filed by said Lippitt Woolen Company and said claimant, is that of jurisdiction over the fund or property in question; for it is clear that jurisdiction over the principal defendants was obtained by their voluntary appearance in the case. The answer to this question depends upon the *situs* of the property sought to be attached. If it was in this State, as contended by the plaintiff, the court obtained jurisdiction; but if it was in Massachusetts, as contended by the Lippitt Woolen Company and the claimant, then the court did not obtain jurisdiction; for it is an elementary principle of law that jurisdiction, to be rightfully exercised, must be founded upon the presence of the person or thing in respect to which the jurisdiction is exerted *within the territory.* *Plimpton* v. *Bigelow*, 93 N. Y. 592.

In order to make a valid seizure, then, by process of attachment, whether of tangible or intangible property or interest, the *res* must be within the territorial jurisdiction. That is, if the *res* consists of visible and tangible property, it must be found and seized within the State; and if it consists of a mere debt or *chose in action*, then its *situs* must be there.

Now, it is evident that a *chose in action*, being an intangible chattel, cannot, strictly speaking, have a physical location. Its *locus* or *situs* is, therefore, a legal fiction, and, being so, it may have different *situs* for different purposes, that is, a conventional *situs*. Thus, the *situs* thereof for the purposes of taxation is the domicile of the creditor or payee of the debt. For the purposes of administration, so far as the non-resident creditor is concerned, it is also at his domicile. But so far as the remedy of the creditors of the payee of the debt is concerned, the authorities are very uniformly to the effect that the *situs* of the debt is at the domicile of the debtor, and that wherever the creditor might maintain a suit to recover the debt, there it may be attached as his property, provided the laws of the forum authorize it; or, as said by Shiras, J., in *Mason* v. *Beebee*, 44 Fed. Rep. 556, "the *situs* of property for the purpose of jurisdiction is one thing, and its *situs* for the purposes of determining the

right of the parties thereto is another, and the two are not necessarily the same."

In a late case decided by the Supreme Court of Minnesota, this doctrine is thus concisely stated by Mitchell, J.: "While by a fiction of law a debt, like other personal property, is for most purposes, as, for example, transmission and succession, deemed attached to the person of the owner, so as to have its *situs* at his domicile, yet this fiction always yields to the laws for attaching the property of non-residents, because such laws necessarily assume that the property has a *situs* distinct from the owner's domicile. For such purposes a debt has a *situs* wherever a debtor or his property can be found. Wherever the creditor might maintain his suit to recover the debt, there it may be attached as his property provided, of course, the laws of the forum authorize it." *Harvey* v. *Great Northern Ry. Co.*, 50 Minn. 405 ; *Blake* v. *Williams*, 6 Pick. 286 ; *Lewis* v. *Bush*, 30 Minn. 244 ; Drake on Attachment, 6th ed. § 597. In *Neufelder* v. *German American Ins. Co.*, 6 Wash. 336, 22 L. R. A. 290, the court say : "Although the *situs* of intangible personal property may be at the domicile of the creditor for the purpose of taxation or distribution, yet for the purpose of collection a debt is ambulatory, and accompanies the person of the debtor." While, therefore, it is a general rule that personal property follows the person of the owner and is governed by the laws of his domicile, yet this rule is subject to certain exceptions, and one of these exceptions is that the *lex rei sitœ* regulates the legal remedy. *Blanchard* v. *Russell*, 13 Mass. 1, 5.

Attachment laws, as said in *Green* v. *Van Buskirk*, 7 Wall. 139, "necessarily assume that property has a *situs* entirely distinct from the owner's domicile." The plaintiff occupies, as against the garnishee, the position of the defendant, with no more rights than the defendant had, and liable to be met by any defence which the garnishee might make against an action by the defendant. See also *Strong* v. *Smith*, 1 Met. 476 ; *Campbell* v. *Nesbitt*, 7 Neb. 300 ; Drake on Attachment, 6th ed. 452.

If this be so, and we see no reason to doubt its correctness,—it follows that, as the defendants Brown, Steese & Clarke could have maintained an action against the garnishees in this State for the recovery of the debts in question, then said debt was within this State and subject to attachment here.    See also *Bragg* v. *Gaynor*, 85 Wisc. 468 ; *Wyeth Hardware Mfg. Co.* v. *Lang*, 29 S. W. Rep. 1010 ; *Berry* v. *Davis*, 77 Tex. 191 ; *Harwell* v. *Sharp*, 85 Ga. 124 ; *Hull* v. *Blake*, 13 Mass. 153 ; *Ocean Ins. Co.* v. *Portsmouth Marine Ry. Co.*, 3 Met. 420 ; *National Fire Ins. Co.*, v. *Chambers*, 32 Atl. Rep. 663 ; *Mason* v. *Beebee*, 44 Fed. Rep. 556 ; *Hannibal & St. Joseph R. R. Co.* v. *Crane*, 102 Ill. 258.

Nor is it material in a proceeding of this sort, where the creditor's remedies are concerned, that the debt is payable at the domicile of the payee, it being well settled that "where the garnishee is indebted it will not vary his liability that his contract with the defendant is to pay the money in another state or country than that in which the attachment is pending."    Drake on Attachment, 6th ed. § 597, and cases cited.

The debt of the garnishee to the defendants in the case at bar, although payable in Massachusetts, was yet a debt everywhere, in whatever country it or its property might be found ; and hence a suit for the recovery thereof, as we have already said, could have been prosecuted in the courts of this State.    See *Sturtevant* v. *Robinson*, 18 Pick. 175 ; *Nichols* v. *Hooper*, 61 Vt. 295 ; *Lieber* v. *U. P. R. R. Co.*, 49 Iowa, 688.

The counsel for the said garnishee and claimant, while they have not furnished us with much judicial authority to the contrary of the foregoing doctrine, have presented a very elaborate and learned argument in support of their contention that said debt or pecuniary obligation could not be made the subject of a proceeding *quasi in rem* in this State, (*a*) because it had no *situs* at the domicile of the debtor, and was not property here over which the legislature and courts of this State had dominion and control ; and (*b*) because if it

had been property here the court could not have discharged the debt as against the non-resident owners not personally subject to the control and jurisdiction of the court, without impairing the obligation of contract.

In support of their contention that the *situs* of the debt was not here but was at the domicile of the payees thereof, counsel have cited and elaborated numerous cases on taxation, both in the state and federal courts, which hold with great unanimity that, for the purposes of taxation, personal property of the kind in question follows the person and has its *situs* at his domicile, and that only the tangible property of a non-resident is subject to the taxing power of a State. And they earnestly argue that these cases are directly in point and decisive of the question at issue, the sovereign power of a State being best illustrated and most accurately defined by cases on taxation.

It is undoubtedly true that the jurisdiction of the State for purposes of taxation cannot be held to extend to the property which a non-resident has in a debt which he holds against a resident. For, as said by Judge Cooley in his valuable work on taxation, "the state has no jurisdiction to assess a tax as a personal charge against non-residents; neither can the personalty of a non-resident be taxed unless it has an actual *situs* within the state, so as to be under the protection of its laws. The mere right of a foreign creditor to receive from his debtor within the state the payment of his demand cannot be subjected to taxation within the state. It is a right that is personal to the creditor where he resides, and the residence or place of business of his debtor is immaterial. The power of taxation, however vast in its character, and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state. These subjects are persons, property and business. Whatever form taxation may assume, whether as duties, imposts, excises or licenses, it must relate to one of these subjects. It is not possible to conceive of any other, though as applied to them the taxation may be exercised in a great variety of ways. . . . . . . The creditor cannot be taxed, because he is not within the juris-

diction, and the debts cannot be taxed in the debtors' hands, through any fiction of law which is to treat them as being, *for this purpose*, the property of the debtors. They are not property of the debtors in any sense; they are the obligations of the debtors, and only possess value in the hands of the creditors." Cooley on Taxation, 2d ed. 21–22.

But, conceding that the State has no power to tax a mere *chose in action* belonging to a non-resident, does it therefore follow that it cannot authorize an attachment thereof by process of garnishment? Or, in other words, may not the debt, which is an intangible thing, have a *situs* at the domicile of the creditor for the purpose of taxation, and also at the domicile of the debtor for the purpose of attachment? We see no reason why it may not; and the authorities above cited, together with many others which might be added, fully support the view that it may. Moreover, for us to hold that a debt due to a non-resident is not attachable by trustee process here would be both to render our statutes relating to foreign attachment largely null and void, and also to overrule the settled practice of the court from time immemorial. Indeed, until a comparatively recent date, an action could not be commenced by garnishment, unless the defendant was out of the State. *Cottle* v. *American Screw Co.*, 13 R. I. 627.

But the counsel for said trustees and said claimant further urge, in support of their contention that said statute is unconstitutional, that the statute of the State, being without force in any other State, cannot discharge a debt held by a citizen of another State. And in this connection they have referred us to numerous cases bearing upon the question of the effect of discharge in insolvency under State insolvency laws.

The general doctrine for which counsel contend is this: That the insolvency laws of one State have no effect against the citizens of another State holding claims that follow the person of a creditor, no matter where the debt was contracted, or where it was made payable, unless they place themselves under the jurisdiction of the law by voluntarily becoming parties to the insolvency proceedings.

That the statute laws of a State can have no extra-terri-
torial operation or force is everywhere admitted ; for it goes
without saying that, each State being an independent sov-
ereignty subject only to the limitations of the Constitution of
the United States, no State can legislate with regard to the
rights of citizens of another State, except and in so far as
such citizens or their property are found within the territorial
limits of the State where the law is passed. See *Gilman* v.
*Lockwood*, 4 Wall. 409 ; *Denny* v. *Bennett*, 128 U. S. 489 ;
*Green* v. *Sarmiento*, 10 Fed. Cases, 1117.

We fail to see the pertinency of this doctrine, however,
to the case before us ; for here, as we have already seen, the
debt sought to be affected is within the jurisdiction of this
court. The *res* is *here*, and this is a proceeding *quasi in rem*
to reach and appropriate that *res* to the payment of the judg-
ment debt of the defendants. In a word, it is compelling the
payment of the defendants' debt out of their property found
in this State.

As to the second point made by the counsel for said trustees
and the adverse claimant, viz., that if the debt was property
here the court could not discharge it, as against the non-
resident owners thereof not personally subject to the juris-
diction of the court, without impairing the obligation of
contract.

The position thus taken, as we understand it, amounts to
this, viz., that our statute which provides that "Any trustee,
after final judgment or decree against the defendant, may
satisfy such judgment or decree, or any part thereof, to the
amount of the estate attached in his hands, before any suit
shall be brought against him therefor ; and such payment
shall avail for his discharge, as against both plaintiff and de-
fendant, for the amount thereof," is unconstitutional in so
far as it affects debts due to non-residents, in that it deprives
the owners of their property in the debt without due process
of law.

But what is due process of law except the observance of
those general rules established in our system of jurispru-
dence for the security of private rights ; *i. e.*, a trial or pro-

ceeding in which the rights of the parties, after notice and opportunity to be heard shall have been duly given, shall be decided by a tribunal appointed by law and governed by the rules of law previously established ?    *Kilbourn* v. *Thompson*, 103 U. S. 168 ; *Hagar* v. *Reclamation District No. 108*, 111 U. S. 708.    For, as forcibly stated by Mr. Webster, in the famous Dartmouth College case, " By the law of the land is most clearly intended the general law ; a law which hears before it condemns ; which proceeds upon inquiry, and renders judgment only after trial."

A valid attachment by trustee process creates a lien upon the debt in the hands of the trustee in favor of the attaching creditor.    *Blake* v. *Williams*, 6 Pick. 286, 303.    See also *Eddy* v. *O'Hara*, 132 Mass. 56 ; McConnell on Trustee Process, § 297, and cases cited.    And where such trustee is compelled by due process of law to pay a debt due to A., his creditor, to B., a creditor of A., who has thus attached it in his hands and possession, such payment *operates* as a full discharge of the debtor's liability to the extent of the amount paid, and is everywhere pleadable in bar of any suit which the creditor might subsequently bring for the recovery of such debt.    As said by this court, in *Alves* v. *Barber*, 17 R. I. 712, 714, regarding the effect of a judgment charging the garnishee, " It practically divested the title of the defendant in that suit, the present plaintiff, to the money in the hands of the trustee, and transferred it to the plaintiffs, so that, in legal contemplation, it was applied to the payment of the plaintiffs' judgment against the defendant, the trustee being authorized to pay it over to the plaintiffs and be discharged as against both plaintiffs and defendant for the amount so paid."    See also *Abbott* v. *Davidson*, 18 R. I. 91.    Indeed, it has been held that where there is a subsisting *judgment* against a trustee it constitutes a good defence for him in an action by his principal against him for the same cause of action *without proof of satisfaction.*    See *McAllister* v. *Brooks*, 22 Me. 80, and cases cited.    A *chose in action* is arrested by this process of garnishment and made to answer the debt of the principal.

But how does our statute above quoted, relating to the discharge of the debt due from the garnishee to the principal defendant, impair the obligation of contract? And, in this connection, it may be useful to inquire what the contract in question was. It was this: The principal defendants sold and delivered wool in Boston to the Lippitt Woolen Company, the payment thereof to be made in Boston. Before the time for payment had arrived, the plaintiff attached the debt by trustee process, and is seeking to compel payment thereof to him as a creditor of the principal defendants, instead of making such payment to them. That is, he is seeking in effect by operation of law to *transfer* the indebtedness of the trustees, from the principal defendants, to him. Now suppose that to be done, as it practically is when the trustee proceedings are regular, and a judgment is obtained against the trustee for the amount of the debt in his hands. Is it not perfectly obvious that a satisfaction of that judgment *ipso facto* discharges the obligation of the trustee, who is the debtor, to the principal defendants? The judgment, if binding on the trustee, is also binding on the principal defendants and all parties in privity with either. And the satisfaction of the judgment against the trustee is an extinguishment of his debt to his principal creditor, and has precisely the same effect as if it were paid to the creditor directly. As stated in 2 Wade on Attachment, § 503, "The question to be determined is whether the debt has been satisfied, and the extent of such satisfaction, and it matters not *by* whom it has been paid, nor *to* whom paid, provided it be to one who is entitled to receive it from the one who pays. Hence, where one of several joint debtors in the garnishment proceeding has paid the debt for which the judgment was obtained, it will be for the benefit of his co-debtors, each of whom may rely on it as a defence to a subsequent action by the original creditor."

Said statute, then, in so far as it provides that the trustee, after final judgment against the defendant, may satisfy the same, and that the payment thereof shall discharge him from his debt to the principal defendant, is simply declarative of the legal status of the parties to the contract out of which

the original indebtedness arose, after such change of title to it has been affected by the process of garnishment. And it bears no analogy to the provision for the discharge of a debtor under State insolvency laws as affecting non-resident creditors. In other words, it is not the statute which discharges the debt due from the trustee to the principal defendants at all; but it is the payment of the debt to the attaching plaintiff, in satisfaction of his judgment against the principal defendants. *This* is what works a discharge of the debt. See McConnell on Trustee Process, §§ 295–297, 483, and cases cited. And if it be an impairment of the obligation of contract in this case to compel the debtor to pay the debt in question to the attaching plaintiff, instead of to the principal defendants to whom the contract made it payable, and upon such payment to be discharged from its obligation to the said defendants as to the amount so paid, then we do not see why all foreign attachment laws, whereby a debtor is compelled to pay a debt due to a non-resident creditor to the attaching plaintiff in a proceeding of this sort, are not unconstitutional and void.

In the leading case of *Embree* v. *Hanna*, 5 Johns. 101, Chief Justice Kent said : "Nothing can be more clearly just, than that a person who has been compelled by a competent jurisdiction to pay a debt once, should not be compelled to pay it over again. It has accordingly been a settled and acknowledged principle in the English courts that where a debt has been recovered of the debtor, under this process of foreign attachment, in any English colony or in these United States, the recovery is a protection in England to the garnishee against the original creditor, and he may plead it in bar. . . . . . . If, then, the defendant would have been protected under the recovery had by virtue of the attachment, and could have pleaded such recovery in bar, the same principle will support a plea in abatement of an attachment pending and commenced prior to the present suit. The attachment of the debt in the hands of the defendant fixed it there in favor of the attaching creditors; the defendant could not afterwards lawfully pay it over to the plaintiff. The at-

taching creditors acquired a lien upon the debt binding upon the defendant, and which the courts of all other governments, if they recognize such proceedings at all, cannot fail to regard." See also *Jarvis* v. *Mitchell,* 99 Mass. 530.

But the counsel for said Lippitt Woolen Company further contend that, even if the legislature of this State might, for the purpose of attachment, change the ordinary *situs* and establish a local *situs* at the domicile of the debtors, within the State, for a debt due to a non-resident who is not subject to its jurisdiction or control, the attachment laws of the State have nowhere declared, or attempted to establish, any such local *situs* or to change the ordinary *situs* of such debts, nor do they purport to authorize an attachment of property which a non-resident has in a debt which he holds against a resident.

It is true that we have no statute which, in express terms, authorizes an attachment against a non-resident. But we think there can be no question that our attachment laws are broad enough to include attachments of this sort. Section 14, cap. 32, of the Judiciary Act, provides that "An original writ commanding the attachment of the real or personal estate of the defendant, including his personal estate in the hands or possession of *any person, copartnership or corporation, as the trustee of the defendant,* and his stock or shares in any banking association or other incorporated company, may be issued from the Common Pleas Division of the Supreme Court or any District Court, whenever the plaintiff in the action to be commenced by such writ, his agent or attorney, shall make affidavit," &c. Section 20, cap. 33, provides for the manner of service of the writ, including the service upon a non-resident defendant, and § 2 of cap. 19 of said act provides for the continuance of a case commenced by foreign attachment where the defendant is a non-resident and fails to answer within the regular time limited therefor. With these provisions in view, taken in connection with the settled and heretofore unquestioned practice of the court thereunder, it is hardly necessary to argue in favor of the authority to attach a debt due to a non-resident.

Another question, and one of vital importance, is raised

by the counsel for said Lippitt Woolen Company and for the claimant, King, viz., as to the effect of the said insolvency proceedings in Massachusetts. It is strongly urged that the rulings of the Common Pleas Division fixing August 23, 1889, the date of the first publication of notice in said proceedings, as the date decisive of the question of the effect on the debt in question of the Massachusetts assignment, are erroneous. The contention is that by filing the voluntary petition, hereinbefore referred to on August 12th, (one day before the issuing of the writ in this action,) the defendants submitted themselves and their property to the jurisdiction of the court of insolvency at that time.

The first inquiry which logically arises regarding this branch of the case is, did this court or the Massachusetts court first obtain jurisdiction of the debt in question. For it is undoubtedly the law that whichever first obtained general jurisdiction will hold the same to the exclusion of the other. Under the Massachusetts statute, hereinbefore quoted, the insolvency proceedings date from the first publication of notice. The notice in the proceedings instituted by the defendants was first published on August 23, 1889. But ten days prior to that time, viz., August 13, 1889, the said debt had been attached here and our court had thereby obtained jurisdiction over it.

But the counsel still further urge that, even conceding that the date of the assignment itself, which was September 4, 1889, is the date which is to be decisive on the question of jurisdiction, still the Massachusetts court first obtained it because, in so far as said debt was property, it was property exclusively within the dominion and jurisdiction of the legislature and courts of Massachusetts. As we have already decided that this position is not tenable, we need not consider it further. But, independent of the fact that the attachment preceded the first publication of notice and also the making of the assignment, even though the insolvency proceedings as finally consummated shall be held by relation to have taken effect as of the 12th day of August, 1889, the day on which said petition was filed, still we do not think

that said proceedings can be held so to affect the debt in question as to take away the jurisdiction of this court ; and, primarily, for the reason that said *assignment* was not the personal act of Brown, Steese & Clarke. In other words, notwithstanding the fact that the said insolvency proceedings were set in motion by a part of the debtors, viz., Steese and Clarke, or even by all of them, yet said proceedings are to be regarded as involuntary, the test being whether the insolvency system provides for compulsory proof of the debts under penalty of losing them by the discharge of the debtors from all liability therefor. And this the Massachusetts statutes clearly require. Admitting that the general rule is that a transfer of personal property by the owner thereof is governed by the law of the domicile of the owner, and also that this rule applies to voluntary assignments for the benefit of creditors, and that the title of the assignee thereunder, if valid·by the law of the domicile, will prevail against the lien of an attachment made in another State subsequent to such assignment in favor of a creditor there, upon a debt belonging to the assignor and embraced in the assignment, (*Noble* v. *Smith,* 6 R. I. 446); yet this rule, as said by Andrews, C. J., in *Barth* v. *Backus,* 140 N. Y. 230, 235, "is subject to a qualification established in the jurisprudence of the American States, that a title to personal property acquired *in invitum* under foreign insolvent or bankrupt laws, good according to the law of the jurisdiction where the proceedings were taken, will not be recognized in another jurisdiction where it comes in conflict with the rights of creditors pursuing their remedy there against the property of the debtor, although the proceedings were instituted subsequent to and with notice of the transfer in insolvency. This exception proceeds upon the view that to give effect to such a transfer arising by operation of law, and not based upon the voluntary exercise by the owner of the *jus disponendi*, would be to give the foreign law an extra-territorial operation, which the rule of comity ought not to permit to the prejudice of suitors of another jurisdiction."

Insolvency proceedings similar to these in the case at bar

have repeatedly and almost uniformly been held not to affect an attachment made subsequent thereto in another State. See *Goodsell* v. *Benson,* 13 R. I. 225 ; *Sturtevant* v. *Armsby Co.,* 23 Atl. Rep. 368 ; *Rhawn* v. *Pearce,* 110 Ill. 350 ; *Townsend* v. *Coxe,* 151 Ill. 62 ; *Felch* v. *Bugbee,* 48 Me. 9, 18 ; *Dunlap* v. *Rogers,* 47 N. H. 281 ; *Harrison* v. *Sterry,* 5 Cranch, 289 ; *Reynolds* v. *Adden,* 136 U. S. 348 ; *Paine* v. *Lester,* 44 Conn. 196 ; *McClure* v. *Campbell,* 71 Wis. 350 ; *In re Waite,* 99 N. Y. 433 ; *Crapo* v. *Kelly,* 16 Wall. 610 ; *Fox* v. *Adams,* 5 Me. 245.    We are therefore of the opinion that said insolvency proceedings in Massachusetts did not take away, or have any effect upon, the jurisdiction of the courts of this State over the debt in question.    And, being of this opinion, it obviously becomes unnecessary for us to consider the title to said debt which is set up by the adverse claimants, as their title is based solely upon said insolvency proceedings and the conveyances made thereunder.    It also becomes unnecessary, for the same reason, to consider the question, which was very learnedly argued by counsel, as to the " full faith and credit " to which the judicial proceedings in the Superior Court of Massachusetts, hereinbefore referred to, are entitled in this State.

The counsel for said Lippitt Woolen Company and the adverse claimant further contend that said debt was not attachable because, by the terms of the contract out of which it arose, it was not due and payable at the date of such attachment, and that, as the principal defendants had no present right of action in Rhode Island against their debtors, the trustees, to hold that a garnishment can be maintained would be to place the plaintiffs in a better position than the principal defendants occupied.    It is doubtless true, as a general rule, that the plaintiff in trustee process is not to be placed in a better position than the principal defendants with regard to the debt in question.    *Waldron* v. *Wilcox,* 13 R. I. 518 ; *Brown* v. *Collins,* 18 R. I. 242.    But this rule, like most others, is subject to several exceptions, (2 Wade on Attachment, § 327), one of which is that where the trustee owes a debt to the principal defendant, which debt is not subject

to any contingency, it is liable to attachment by trustee process, notwithstanding the fact that it is not then due and payable so as to enable the owner thereof to maintain a suit for its recovery. That is, if the debt is payable absolutely, it may be attached though *solvendum in futuro*. This doctrine is so well established everywhere, excepting perhaps in the State of Tennessee, (See *Childress* v. *Dickens*, 8 Yerger, 113 ; *McMinn* v. *Hall*, 2 Tenn. 328) as hardly to call for the citation of authorities in support thereof. If any are necessary, however, see *Smith* v. *Millett*, 11 R. I. 528 ; *Stone* v. *Hodges*, 14 Pick. 81 ; *Telles* v. *Lynde,* 47 Fed. Rep. 912 ; *Fulweiler* v. *Hughes*, 17 Penn. St. 440 ; *Sayward* v. *Drew*, 6 Me. 263 ; Drake on Attachment, 6th ed. §§ 541, 557, and cases cited ; 2 Wade on Attachments, § 484.

Another point upon which counsel for the adverse claimant King rely is that the Common Pleas Division erred in ruling out the evidence offered by him for the purpose of showing that this is not a suit brought in good faith by a citizen of Rhode Island for his own benefit, but that it is colorable only and in fact in the interest of the International Trust Company of Boston. To this it may be replied, *first*, that it is wholly immaterial whether the plaintiff was in fact the owner of the notes upon which the suit was based or simply had them in his hands for collection. For, being negotiable promissory notes payable to said International Trust Company, and by it endorsed and delivered to the plaintiff, he unquestionably had the right to sue thereon. *Bank of America* v. *Senior*, 11 R. I. 376 ; and, *second*, that the Common Pleas Division had no jurisdiction to inquire into the *bona fides* of the said suit at law, for the very conclusive reason that all questions relating to said notes and the plaintiff's right to sue thereon had become *res judicata* by the proceedings hereinbefore referred to ; and therefore to have admitted the evidence offered by the claimant would have been in effect to allow a stranger to the suit to impeach the judgment rendered therein.[1]

---

[1] King filed his claim to the fund in the hands of the Lippitt Woolen Company, October 16, 1891.

The last ground upon which said Lippitt Woolen Company and the claimant King ask for a new trial is that the Common Pleas Division wrongfully charged said Lippitt Woolen Company, as garnishee, with interest on the amount of its indebtedness to the principal defendants. The argument in support of this contention is, in substance, that the Lippitt Woolen Company had no specific moneys in its hands belonging to the principal defendants, either in trust or on special deposit or otherwise ; but that it was simply indebted to them for the wool it had purchased ; that any money with which it might satisfy said indebtedness was its own money, and if it is chargeable with interest it is simply because it has detained the debt since it became due and payable. The facts relating to this branch of the case, as shown by the sworn answers of said Lippitt Woolen Company, are that it has never made any special deposit of the amount disclosed in its original affidavit, as due from it to the principal defendants ; that it has never set apart said sum ; that it is impossible to state how its use of the money due from it, as aforesaid, has been changed in consequence of the service of the plaintiff's writ upon it ; that it has used all its money as it has seen fit, from time to time, without distinction, and that at the time of the service of the writ in this case its moneys were in various banks and in the hands of various individuals, and has fluctuated in amount from time to time since then according to the necessities of its business.

The question as to whether the garnishee shall be required to pay interest on its debt due to the principal defendant during the time he is restrained by the attachment from paying the debt, is one which has been much discussed and upon which the decided cases are not in accord. One line of authorities holds that where the garnishee is indebted to the principal defendant upon a demand where interest would be recoverable by the principal defendant only as damages for breach of contract, interest will not be deemed to accrue during the pendency of the trustee process. The reason ordinarily given in support of this view is that the garnishee, having been restrained by the garnishment from paying his

debt, is in no fault for not paying, and hence there is no wrongful detention and consequently no liability for damages. See *Prescott* v. *Parker*, 4 Mass. 170 ; *Irwin* v. *Pittsburg & Connellsville R. R. Co.*, 43 Penn. St. 488 ; *Adams* v. *Cordis*, 8 Pick. 260 ; *Swamscot Machine Co.* v. *Partridge*, 5 Foster, 369.

Another line of authorities holds that, as interest is the mere incident to the debt arising from the defendant's use of the money, the attaching plaintiff is as much entitled to recover the one as the other. In other words, that he is entitled to claim and recover all that the principal defendant could claim and recover from his debtor, the garnishee. *Woodruff* v. *Bacon*, 35 Conn. 97. See also *Templeman* v. *Fauntleroy*, 3 Rand. Va. 434 ; *Smith* v. *German Bank*, 60 Miss. 69 ; *Candee* v. *Webster*, 9 Ohio St. 452.

We are inclined to adopt the latter view of the garnishee's liability, rather than the former. We can see no sufficient reason for holding that a garnishee, who continues to hold and use the money in his hands after it is due and payable, should not be chargeable with interest thereon, notwithstanding he is prevented by the attachment from paying it over to the principal defendant. If he wishes to avoid his liability to pay interest, he can set the fund apart or so deposit it that it will draw interest, or being a mere stakeholder, he can pay it into the registry of the court, where interest will accrue for the benefit of the party or parties finally held to be entitled thereto. Indeed, one of presumptions upon which the first class of decisions above referred to seems to rest is, that the garnishee keeps the money by him set apart for the payment of the claim of the attaching creditor. Moreover, the injustice which would result in the present case, both to the principal defendants and also to the attaching plaintiff, by exonerating the garnishee from the payment of interest, is a strong argument in favor of the position we have taken. The situation is this : The plaintiff has recovered a final judgment against the principal defendant in the sum of $41,534.27. The disclosure of said trustee shows that the sum of $11,938.39, belonging to the principal defendant is in

its hands.    Now suppose it to be charged with only this latter amount as garnishee.    The result is that upon payment of said sum its entire indebtedness to the principal defendants is discharged, notwithstanding the fact that it has had the use and benefit of said large sum in its business for upwards of, five years.    The principal defendants get no benefit from the use of said money by their debtor, the garnishee, by way of a reduction of their indebtedness to the plaintiff, on the one hand, and the plaintiff gets no benefit of said use by way of the satisfaction of his judgment against the principal defendants, on the other.    In short, the result would be that the garnishee will have had the use and benefit of said large sum of money for the length of time aforesaid, without being liable to anybody therefor.    If it be argued that the said Lippitt Woolen Company has been necessarily subjected to trouble and expense, as it apparently has, in the employment of counsel properly to protect its rights in the premises, and in answering the numerous interrogatories propounded in behalf of the plaintiff, and that for this reason it ought not to be compelled to pay for the use of the money in its hands, it is sufficient to reply that it is within the power of the court to allow it such costs and charges as are reasonable in the case, under the provision of the Judiciary Act, cap. 34, § 29.

We will now consider the grounds upon which the plaintiff asks for a new trial.    And first with regard to the refusal of the court to charge the Riverside & Oswego Mills and the Wanskuck Company as garnishees.    The facts upon which the Common Pleas Division refused to charge these garnishees are as follows :

1.—The disclosure of the Riverside & Oswego Mills shows a very complicated state of affairs existing between it and the principal defendants, so that the balance due from it to them is very difficult, if not, indeed, impossible to determine in a proceeding of this sort.    It also shows that, at the time of the service of the plaintiff's writ upon it, all of the property of said principal defendants in its hands and possession had already been attached in suits brought against

said principal defendants by the Industrial Trust Company and the Hollis Dressed Meat and Wool Company, the aggregate amounts claimed in which suits exceeded the amount of the defendants' property in the hands and possession of said Riverside & Oswego Mills.

2.—The Wanskuck Company's disclosure shows that it had in its hands and possession at the time of the service of the plaintiff's writ upon it, $28,823.80 due to the principal defendants; that a part thereof, viz., $6,808.23, was the price of eighty-two bags of wool bought by it of said principal defendants July 26, 1889, under the supposition that said bags of wool were the property of said principal defendants; but that, after the purchase of said wool, the Massachusetts Loan & Trust Company, of Boston, notified it that said wool was *its* property and not the property of said defendants, and that said defendants had no right or authority to sell the same, and that said Massachusetts Loan & Trust Company would look to said Wanskuck Company for the purchase price thereof. It also appears that said Massachusetts Loan & Trust Company now has a suit in trover, pending in said Common Pleas Division, against said Wanskuck Company for the value of said eighty-two bags of wool.

3.—Said Wanskuck Company's disclosure also shows that, at the time of the service of the plaintiff's writ upon it, all the property of said principal defendant in the hands and possession of said Wanskuck Company had already been attached, in suits brought against said principal defendants by the Hollis Dressed Meat and Wool Co., the Industrial Trust Company, and the Massachusetts Loan & Trust Company, which suits are still pending, the aggregate amounts claimed in the same exceeding the amount of the defendants' property in said Wanskuck Company's hands and possession.

In view of these disclosures, the Common Pleas Division held that it could not enter a charging order against the Riverside & Oswego Mills and the Wanskuck Company, for the reason that, until it shall be ascertained by the disposition of the pending suits wherein said garnishees have been previously served with trustee process, it is impossible to

determine whether either of said garnishees are chargeable, and if chargeable, to what extent.

We think this ruling was correct.    For, while the statute clearly recognizes the possibility and the right of successive attachments of the same property, (Judiciary Act, cap. 33, § 32, and cap. 34, § 1,) and the right of the plaintiff to share therein after judgment, in the order of his attachment, as contended by plaintiff's counsel, yet we do not see how the court could enter a charging order in this case until the disposition of said prior suits, for the reason that the whole fund in the hands of said garnishees may be absorbed in the payment of the judgments which may be obtained in the prior actions.    And when the question as to whether a garnishee should be charged is involved in litigation in this manner, with the result necessarily problematical and in doubt, the court will not enter a charging order.    Moreover, said statute (Judiciary Act, cap. 34, § 18) provides that the court, in charging a garnishee, must determine the extent to which he is chargeable, and also that the execution which issues upon the judgment shall have the amount, for which he is charged, inserted therein.    Judiciary Act, cap. 36, § 20.    And until the amount due upon said prior attachment shall have been determined, it is impossible to say whether any amount will remain to be applied under this attachment.    The proper course for the plaintiff to have taken, in these circumstances, was to ask for a continuance of the case until said prior suits were disposed of.    *Cutter* v. *Perkins,* 47 Me. 557 ; *Prentiss* v. *Danaher,* 20 Wis. 311 ; *Brickey* v. *Davis,* 9 Bradw. 362 ; Drake on Attachment, 6th ed. § 630.    Indeed, the Common Pleas Division repeatedly suggested the difficulty aforesaid, and offered to hold the case until the determination of said prior suits ; but the plaintiff insisted upon an immediate determination by the court of the liability of said garnishees.    He has no occasion, therefore, to complain of the situation in which he is placed by its refusal to charge said garnishees.

The next question in point of importance, which is raised by the plaintiff's petition for a new trial, is whether the as-

signees of the Riverside & Oswego Mills are chargeable as garnishees. We are clearly of the opinion that they are not; and that the Common Pleas Division was right in discharging them. In order to charge a garnishee, it is necessary (1) that he shall have personal property in his possession, belonging to the defendant, capable of being seized and sold on execution, or (2) that he be liable *ex contractu* to the defendant, whereby the latter has at the time of the garnishment a legal cause of action, present or future, against him. In other words, in order to a recovery against a garnishee, it must be shown affirmatively, either by his answer or by evidence *aliunde*, that he has property of the defendant in his possession of a description which will authorize his being charged, or that he is indebted to the defendant. Drake on Attachment, 6th ed. § 461; *Smith* v. *Millett*, 11 R. I. 528; *Maine Fire & Marine Ins. Co.* v. *Weeks*, 7 Mass. 438; *Field* v. *Crawford*, 6 Gray, 116. These garnishees, at the time of said service upon them, had no personal property in their possession belong to the principal defendants capable of being seized and sold on execution, nor had the principal defendants any legal cause of action against said garnishees. The trusts of the assignment which they had assumed, were still in process of administration and no dividend had been declared. And, even if as *cestuis que trustent*, .entitled to participate in the benefits of the assigned estate in the hands of the assignees, the principal defendants could have compelled in equity the execution of the trust and also an accounting, yet this merely equitable right was not attachable by trustee process. See *Perry & Barnard* v. *Thornton*, 7 R. I. 15; *Clarke* v. *Farnum*, 7 R. I. 174; *Waldron* v. *Wilcox*, 13 R. I. 518; *Massachusetts National Bank* v. *Bullock*, 120 Mass. 86; *Nims* v. *Ford*, 159 Mass. 575; *Hoyt* v. *Swift*, 13 Vt. 129; *Hassie* v. *G. I. W. U. Congregation*, 35 Cal. 378; Drake on Attachment, 6th ed. §§ 457, 511. Again, the debt for which an attachment in trustee process may issue must possess an actual character and not be merely possible or probable even, depending on a contingency which may never happen. In the case at bar there was no debt owing

from the assignees to the principal defendants at the time of the garnishment, and whether there ever would be depended upon several contingencies. The expenses attending the execution of the assignment, which were first to be paid, might exhaust the property. So might the payment of the preferred claims of the employees. And the mere fact, that long subsequent to the service of said writ on the assignees, it turned out that said estate was sufficient to pay a dividend, and that a dividend of 62½ per cent. was declared by the assignees, makes no difference. For, even admitting that an action at law will lie against them for the amount of a dividend after it is duly declared, and also that they would be liable to trustee process in such circumstances, yet at the time of the service of the writ in this case there was no dividend, and hence there was no debt.

In support of its contention that said assignees were properly chargeable as garnishees, counsel for the plaintiff commends to our attention the case of *Irwin* v. *McKechnie*, 58 Minn. 145, recently decided by the Supreme Court of Minnesota, in which the receivers of a railroad, although officers of the court, are held liable to the process. An examination of that case, however, shows that under the statute of that State styled " The Removal Act," passed March 3, 1887, receivers are subject to suit in respect to any transaction of theirs in operating the road placed under their control by the court. But, while admitting that this was so, the counsel for the garnishees in that case took the point that the money sought to be reached was *in custodia legis*, and hence not subject to garnishment. The court said : " No one will question the correctness of the proposition that property in the hands of receivers appointed by the court is *in custodia legis*, and not subject to levy or garnishment. This doctrine receives additional force in this case from the rule of judicial comity between state and federal courts by which each will refuse to interfere with property in the custody of the other,— a rule which we are always solicitous to observe. But in this case it will be noticed that what is sought to be reached by garnishment is the property, not of the railway company,

but of the defendant, viz., a debt due him from the receivers. Moreover, while garnishment of a debt is often called a mode of attachment, yet it does not affect a specific lien on any property of the garnishees, such as is acquired by the actual seizure of property. The effect of the judgment is merely to determine the existence and amount of the debt, and to substitute the plaintiff for the defendant as the person to whom it is payable. The judgment against the receivers would not be against them personally, but against them officially. No executory process could be issued on it, for that would interfere with the control of the property in the custody of the federal court. The manner in which the judgment so. rendered shall be paid must be under the exclusive control of that court. It can only be satisfied as other demands may be satisfied, viz., by an application to the court in which the receivership proceedings are pending for an order directing its payment in the due order of the settlement of the affairs of the insolvent company by that court. Under the 'removal act' the defendant himself could have sued the receivers, and recovered judgment, and we are unable to see why the plaintiff may not, through garnishee proceedings, recover judgment against them for the same claim, or why a judgment in his favor interferes with property in the custody of the federal court any more than would a judgment in favor of the defendant for the same claim. We understand that the order of the court appointing these receivers is even broader than the statute, and authorizes the suit to be brought in any court of competent jurisdiction on claims against the company which accrued before the receivership, as well as those subsequently incurred by the receivers. We only refer to this as showing that the federal court does not consider such suits as at all interfering with its jurisdiction over the receivership or with the property in its custody. In view of the fact that the receivers of railway companies, as ancillary to winding up the insolvent estate for the benefit of creditors, are authorized to operate the road in lieu of the directors,—sometimes for years,—any other rule would work great injury, and would often leave the creditors of the em-

ployés of the receivers remediless." This case, therefore, as we view it, is clearly against the position taken by the plaintiff's counsel, instead of being an authority in support of it.

But it is urged that the word "trustee" in our statute, relating to persons who may be garnished is broad enough to include one holding property in trust for the benefit of another, and particularly for the reason that the statute in which the phrase "the attorney, agent, factor, trustee or debtor," appears was in force as early as 1774, when and for a long time afterwards our courts had no chancery jurisdiction over private voluntary trusts, and the creditor had no other means of reaching his debtor's property held under it than by this process. It is true that the word "trustee," taken by itself, is broad enough to include, and does include, an assignee ; for an assignee is the trustee both for the creditors of the assignor and also for the assignor himself. Said word must not be taken out of its setting, however, and simply its abstract or technical meaning determined, but it must be considered in its collocation and also with reference to the process of garnishment provided for by our statutes relating to that subject. And, (*1*) it may be observed that the proceeding itself is denominated "trustee process" in the statutes. This is the term generally employed in the New England States to designate the proceeding. See Judiciary Act, cap. 34, § 24. In some States it is called "*factorizing.*" In the one case the party in possession is called the "trustee," in the other the "factor ;" but, after all, it is but another mode of effecting the same general purpose. (*2.*) The form of writ prescribed by our statute commands the attachment of the personal estate of the defendant in the hands or possession of some person as "trustee" of the defendant. It is the "trustee" who is to make the disclosure provided for (Judiciary Act, cap. 34, § 10) ; and it is the "trustee" who is authorized to satisfy the judgment against the defendant in all cases. Judiciary Act, cap. 34, § 15. It is the "trustee" who, in case the property in his hands does not consist of money but of specific articles, is authorized, after judgment

against the principal defendant, to surrender such articles to the officer charged with the service of the execution. Judiciary Act, cap. 34, § 16. In short, the word "trustee," as used in the various provisions of the statutes relating to trustee process, manifestly denotes the debtor or agent of the principal defendant, *i. e.* the person against whom an action *ex contractu* at law only might be maintained in favor of the principal defendant, and is not used in its technical sense. (*3*) It was evidently never intended that the trustee process provided for in our statutes should be an equitable proceeding, but strictly a proceeding at law. See *Raymond* v. *Narragansett Tinware Co.*, 14 R. I. 310. As pertinently stated by the plaintiff's counsel himself, in his brief, "Trustee process is statutory, and the rights legal rights." If the General Assembly had intended that assignees in insolvency, or even voluntary assignees, should be liable to trustee process, it is reasonable to suppose that the necessary legal machinery for bringing in all the parties in interest, the taking of an account, &c., would have been provided. The farthest our statutes have gone in the direction of making trustee process an equitable proceeding is by letting in adverse claimants to the fund in dispute, (Pub. Laws R. I. cap. 433) and thereby to some extent making it answer the purpose of a bill of interpleader. *Providence Int. for Savings* v. *Barr*, 17 R. I. 131 ; *Hanaford* v. *Hawkins*, 18 R. I. 432 ; *Jenness* v. *Wharff*, 32 Atl. Rep. 908. Nor does the fact suggested by plaintiff's counsel that, at the time when our statute relating to trustee process was first enacted, the court had no chancery jurisdiction, enlarge the scope of said act. For it does not follow that, because the law fails to provide a remedy in a given case, some other remedy may be employed. See *Godding* v. *Pierce*, 13 R. I. 532. We may also add that, notwithstanding the great length of time that said word "trustee" has been used in our statutes relating to trustee process, no case has ever arisen, so far as we are aware, in which an assignee has been held chargeable as trustee thereunder, at least until after a dividend has been declared, nor has it ever been considered at the bar that he could be so

held.    See *Conway* v. *Armington*, 11 R. I. 116.    In *Perry & Barnard* v. *Thornton*, 7 R. I. 15, in which it was attempted to reach an annuity in the hands of the guardian by trustee process, Ames, C. J., said : "It is very plain that he was not her debtor for her annuity, nor, *in the sense of the statute, her trustee*, of the rents and profits of the estate of his wards."

Again.    The plaintiff asks for a new trial because the Common Pleas Division overruled his motion to reopen the case and summon in the prior attaching creditors as parties thereto.    The object of this motion, as stated therein, was "that they (said prior attaching creditors) and each of them may show to this court, and that the court may examine and determine the validity and amount of such their respective alleged prior attachments and pledge, the said plaintiff denying that said parties or either of them now have any valid claim upon or to either said attached fund or any property or any part thereof."    This was clearly an attempt to force the prior attaching plaintiffs to try their cases in the bowels of the one now before us.    We do not think this can be done. The prior attaching creditors are already in court, in the cases before referred to, and clearly have the right as suitors to try their own cases in their own way.    If they should be summoned into this case, there would then be two suits pending to determine the validity of each of their claims against the defendants, and endless confusion and difficulty would arise in finally settling the relative rights of the parties in interest, if, indeed, it were possible to settle said rights in this way.    In short, to have granted the plaintiff's motion would have been in effect to allow him to intervene in said prior suits, which this court has already decided cannot be done.    See *Cross, Petitioner*, 17 R. I. 568.    And, as said by the court in that case, "The orderly way in law is for each one to pursue his own rights in his own action, and if, in so doing, another seeks to circumvent him by fraud, the existing remedies are ample."    This statement also applies with equal force to the trover suit of the *Massachusetts Loan & Trust Company* v. *The Wanskuck Company*, in which it was

sought to recover damages for the conversion of a part of the property which the present plaintiff claims to hold under his attachment. The case of *Hanaford* v. *Hawkins, supra,* upon which the plaintiff's counsel mainly relied in support of the motion now under consideration, disclosed a very different state of facts from that which exists in this case. There it simply appeared from the disclosure of the garnishee that he had received a letter from one John A. Hawkins, prior to the garnishment, stating that he had purchased the judgment, the amount of which the garnishee had collected and had in his possession, but that the garnishee knew nothing of the truth of the alleged fact of an assignment of said judgment. It did not appear, however, in that case that any suit was pending in favor of such alleged claimant, or that he had taken any steps to recover said fund except the giving of said notice to the garnishee. Nor did it even appear that said alleged claimant had had any notice of the garnishment, so that he might appear if he saw fit and be heard on the question of title to said fund. In these circumstances we held that the alleged claimant should be summoned in and made a party to the suit, before determining as to the liability of the garnishee, in order that both his (said claimant's) rights as well as those of the attaching plaintiff in said fund might be fully protected.

Still another ground upon which the plaintiff asks for a new trial is the admission of certain supplemental affidavits or disclosures by the garnishees. We think it was clearly within the discretion of the court to allow such supplemental affidavits to be filed. *Winsted Bank* v. *Adams,* 97 Mass. 110 ; *Collins* v. *Smith,* 12 Gray, 431 ; *Hovey* v. *Crane,* 12 Pick. 167 ; *Soule* v. *Kennebec Maine Ice Co.,* 85 Me. 166. The propriety of allowing a garnishee to amend his affidavit or disclosure, when requested by him, is generally recognized. "There may be cases," as said in Drake on Attachment, 6th ed. § 650, "where the garnishee discovers new facts or finds that he has made an imperfect or erroneous statement; and there seems to be nothing in principle to prevent him before final judgment from making a more complete, perfect and

correct answer, being responsible, as in all other cases, for its truth. The only objection which could arise is that a garnishee might be induced, by new suggestions and new views, to put in an answer varying from his first answer and not true in itself. But when it is considered that, by any mode of administering the law, the garnishee might employ his own counsel and make such answer as he will, there seems to be no more danger of falsification in one case than in the other." If, as suggested by the plaintiff's counsel, it appears by the record itself, in the case at bar, to be perfectly evident that all of said supplemental affidavits were made at the instance of and in collusion with the claimant, King, that certainly cannot prejudice the plaintiff's rights, the rule being that evasive answers by the garnishee will be treated as a nullity; *Scales* v. *Swan,* 9 Porter, Ala. 163; *Parker* v. *Page,* 38 Cal. 522; or, if not so, they will be construed most strongly against him. *Crain* v. *Gould,* 46 Ill. 293; *Keel* v. *Ogden,* 5 T. B. Monroe, 362. And any equivocation will subject the entire answer to suspicion.

With regard to the point taken by the plaintiff's counsel that the overruling by the Common Pleas Division of his motion to strike out certain portions of the affidavits of the garnishees was error, we have to say that we do not think it should be sustained. It was a motion which addressed itself to the sound discretion of the court, and hence, unless it is shown that the overruling thereof was clearly an abuse of such discretion, it is not a proper subject of review. An examination of the affidavits in question does not satisfy us that said ruling was improper. For, while some of the matter objected to is manifestly irrelevant and impertinent, and, as remarked by Rogers, J., in his opinion, "as such when offered by the claimants as mere testimony was not admitted, but when presented and sworn to by the garnishees in their affidavits was allowed to be filed, such permission was granted because in the opinion of the court the rights and liabilities of garnishees and claimants are very different. A garnishee is involuntarily summoned in. If he fails to answer fully, he does so at the peril of being obliged to pay twice. If he

makes a false answer or affidavit, he is liable to an action for damages which may result to the plaintiff from such answer or affidavit.  The sworn answer of the garnishee shall be considered true in deciding how far said garnishee is liable, though either party to the suit, or any claimant of the estate so attached, may allege and prove any facts not stated or denied by said garnishee or trustee that may be material in so deciding.  While, in the case of an ordinary witness, testimony deemed by the court to be irrelevant will not be admitted to take up the time of the court, yet in the case of garnishees' affidavits, as the matter disclosed is deemed by the garnishee necessary for his protection, it would seem to be the better course to let them stand, and upon consideration of the case to reject irrelevant parts, than to suppress and strike out such parts as in the former case the Appellate Division, if the case should be taken up to it, would have the full and undisturbed garnishee's disclosures before it and could also reject what it deemed irrelevant."

As to the contention of the plaintiff that he should have been permitted to offer evidence in support of his allegations filed February 27, 1894, we are of the opinion that it cannot be sustained.  Said allegations, or rather allegations and interrogatories combined, for such they in fact are, related, (1) to the acts of the prior attaching plaintiffs in proving the debts on which said prior actions were based, in the insolvency proceedings in Massachusetts, and also in receiving dividends thereon ; (2) to the discharge of said defendants in said insolvency proceedings ; (3) to the fact that the Riverside & Oswego Mills, or any of its directors or officers, never made and filed in the City Clerk's office of the City of Providence any return, under the statute in such case provided, to exempt its stockholders and directors from personal liability for its debts ; (4) to the question as to how said Trust Company originally came to the possession of the notes, drafts and obligations of the defendants, referred to in the affidavit of the Wanskuck Company, and for and to whom the same and their proceeds were originally discounted and paid, and what

if any collaterals were held by said Trust Company for the same, and the disposition thereof, and what payments said Trust Company has received upon the said notes and obligations, either from such collateral or otherwise, and what disposition it has made of the said notes, drafts and obligations, and which of the same it now holds, and what is the present condition of and who now holds or is really entitled to the same ; (5) to the question as to what and for what was the indebtedness of the defendants to said Trust Company, sought to be enforced in said attachment suit against the defendants, referred to in the affidavits of said Wanskuck Company, and what collaterals were held by said Trust Company for the same, and as to what disposition has been made of said collaterals, and what payments said Trust Company has received upon said indebtedness, either from such collaterals or otherwise, and what disposition of said indebtedness or the evidences thereof has been made by said Trust Company, and what or which of the same it now holds, and what is the present condition of and who now holds or is really entitled to the same ; and (6) as to what was the indebtedness of said defendants to said Hollis Dressed Meat and Wool Co., sought to be enforced in its attachment suit aforesaid, and what if any collaterals were held by said Hollis Dressed Meat and Wool Co., for the same, and the disposition which has been made of said collaterals, and the payments which have been received upon said indebtedness, either from such collaterals or otherwise, and what disposition of said indebtedness or the evidences thereof has been made by said Hollis Co., and what or which of the same it now holds, and what is the present condition of and who now holds or is really entitled to the same.    It will thus be seen at a glance that to have allowed the evidence offered would have been in effect to try the cases of the said prior attaching creditors in the bowels of the one now before us, besides converting the whole proceeding into a bill in equity, neither of which, as we have already seen, can be done.

Finally.   We are therefore of the opinion that neither the plaintiff's petition for a new trial nor that of said Lippitt

Woolen Company and Theophilus King, adverse claimant, should be granted. Said petitions are therefore denied and dismissed and the case remitted to the Common Pleas Division for further proceedings.

*James Tillinghast*, for plaintiff.

*William G. Roelker*, for garnishees, Lippitt Woolen Company and Assignees of Riverside & Oswego Mills.

*William C. Baker*, for garnishee, Wanskuck Co.

*John C. Coombs, Robert W. Burbank & Charles H. Hanson*, for adverse claimant, Theophilus King.