(Superior Court of Cincinnati.)
General Term—July 1896.

THE R. A. KELLEY CO. v. THE GARVIN MACHINE CO.

----

(1). A person cannot be subjected to garnishment by the courts of a state in which he may be temporarily, different from that of his domicile, unless he has property of the debtor in his possession, or owes him a debt payable in such state.

(2). The domicile of the creditor is the situs of the debt.

(3. A debt which arose and is payable outside of a state, and is due from one non-resident corporation to another non-resident corporation, is not subject to process of attachment and garnishment issued by the courts of such state of which they are not residents.

----

Heard on motion to dismiss the action and quash the process of attachment and garnishment

HUNT, J.

The agreed statement of facts recites that the defendant is a corporation under the laws of the state of New York, having no agent or place of

business in the state of Ohio; that the J. A. Fay & Egan Company, the garnishee herein, is a corporation under the laws of the state of West Virginia, having its principal office in Cincinnati, Ohio, and also a place of business and managing agent in Chicago, Illinois, and having no office or place of business in the state of West Virginia, other than is required by the statutory provisions relating to the appointment of an agent or attorney in said state. All these requirements have been complied with by the corporation.

That the statute of the state of West Virginia (chapter 454, section 23,) provides that corporations accepting the provisions of that chapter may keep their principal office in any state or territory of the United States, or in the District of Columbia, but no meeting shall be held outside of said state without reasonable notice.

That the J. A. Fay & Egan Company was incorporated under said chapter, and provided in its certificate of incorporation that the corporation shall keep its principal office or place of business at the city of Cincinnati, in the county of Hamilton, and state of Ohio.

That said statutes further provide that every such corporation, having its principal office or place of business outside of said state, shall, within thirty days after organizing, by power of attorney duly executed, appoint some person residing in said state, to accept service on behalf of said corporation, and upon whom service may be had of any process or notice, and to make return of its property in said state for taxation, and that every such corporation shall pay an annual license fee of $50 to the auditor of said state, and on failure to pay the same shall forfeit its charter to the state.

That the legislature of said state reserves the right to alter the charter granted to said company, and to alter or repeal any law applicable to said company.

That the only dealings defendant has had with said the J. A. Fay & Egan Company have been with its Chicago agency, and have been conducted outside the state of Ohio; said dealings consisting of the sale and delivery of machinery from time to time to said the J. A. Fay & Egan Company, and settlements therefor; and that there was a debt due from said company to the defendant at the time the suit was brought, and it was served as garnishee, which debt arose from said dealings, and was payable at Chicago, and was the only debt between said parties then, since, or now existing.

That the J. A. Fay & Egan Company, since long prior to said service on it as garnishee, has complied with the provisions of the statutes of Ohio requiring corporations organized under the laws of another state to appoint and have an agent within the state of Ohio, upon whom service of any process or notice could be made, and all the other provisions of said statutes concerning such corporations doing business within the state of Ohio.

A motion was filed January 13, 1896, for an order dismissing the action and quashing the process of attachment and garnishment, for the reason ''that this court has acquired no jurisdiction in this action of either the person or the property of the defendant, it being a non-resident of and absent from the state of Ohio, and not having been served with process in this cause, and no property belonging to it having been seized upon such order of attachment, and said garnishee, which is also a non-resident of the state of Ohio, having no property of this defendant in its possession or under its control at or since the commencement of this suit, and not being indebted to the defendant, nor having been indebted to the defendant at any time at or since the commencement of this suit, in the state of Ohio, or on any debt payable therein.''

The court, on April 13, 1896, ordered that the attachment be discharged and the garnishee released from further liability, and error is now prosecuted to reverse the order of the court in special term.

It is claimed on behalf of the plain-

tiff in error, that the debt sought to be reached by the writ of garnishment herein, is subject to the process of this court; while it is the contention of the defendant that this court, under the agreed statement of facts, cannot acquire jurisdiction over that debt, and is without power to make an order affecting it.

It must be conceded that the only manner in which a court can acquire jurisdiction in a cause, other than by service of process upon the defendant, is by subjecting his property within the territorial jurisdiction of the court to its writ. The rule is stated in Story on Conflict of Laws, 8th edition, section 539: "Considered in an international point of view, jurisdiction, to be rightfully exercised, must be founded either upon the person being within the territory, or upon the thing being within the territory; for otherwise there can be no sovereignty exerted upon the known maxim, 'extra territorium jus dicent impune non paretur.'" And again, in the same section: "On the other hand, no sovereigny can extend its process beyond its own territorial limits to subject either persons or property to its judicial decisions. Every exertion of authority of this sort beyond this limit is a mere nullity, and incapable of binding such persons or property in any other tribunals."

The legal principles upon which the law of attachment is founded are the necessary result of certain elementary propositions of law. To this effect is the language of the court in Boswell's Lessee v. Otis et al., 9 How., 336, where it declares that "jurisdiction is acquired in one of two modes: First, as against the person of the defendant, by the service of process; or, secondly, by a procedure against the property of the defendant, within the jurisdiction of the court." In the case of Peoyer v. Neff, 95 U. S., 714, Mr. Justice Field refers to two well established principles of public law respecting the jurisdiction of an independent state over persons and property; first, "that every state possesses exclusive jurisdiction and sovereignty over persons and property within its terri-

tory;" and second, "that no state can exercise direct jurisdiction and authority over persons or property without its territory."

It is hardly necessary, in this discussion, to more than advert to the constitutional provisions that no state can pass a law impairing the obligation of contracts, nor deprive any person of process of law, nor regulate or in any manner interfere with interstate commerce.

The object of attachment and garnishment laws is to reach property of the defendant in the jurisdiction of the court whose aid is invoked. In order, therefore, that jurisdiction may be acquired, two things are necessary (1), there must be property of the defendant, tangible or intangible, to be affected by the process of the court, and (2), that property must be within the territorial jurisdiction of the court.

Where the property is of a tangible character there can be but little difficulty in determining whether or not, it is subject to the jurisdiction of a court; but more doubt is encountered in regard to property of an intangible nature, such as credits and choses in action. There has been some conflict of authority which has doubtless arisen from the adoption, in some instances, of a shifting rule as to the situs or location of property of that description. It is not necessary to discuss the question, as intimated by counsel for defendant in error, that the true rule is that the situs of a credit is the domicile of the creditor; for in this case both the debtor and creditor are non-resident corporations, and the debt arose and is payable outside of the state of Ohio.

The plaintiff in error cites the cases of Rainey v. Maas, 51 Fed. Rep., 580, and Railroad v. Peoples, 31 Ohio St., 537, both of which cases are distinguishable from the case at bar, inasmuch as in each of them the garnishee corporation had control of property of the defendant actually in this state. In Rainey v. Maas the property subjected to the writ of garnishment was a debt which was contracted in Ohio and had been reduced to judgment in,

the court of common-pleas of Cuyahoga county, and there could be no question as to its being subject to the process of an Ohio court. In the case of Railroad v. Peoples, it was an admitted fact that the Pennsylvania Company, garnishee, was operating the railroad known as the Ashtabula, Youngstown & Pittsburgh Railroad within the county of Mahoning and city of Youngstown, and had almost daily in its yards at Youngstown cars of the Pennsylvania Railroad Company (defendant), and at the freight depot in said city, garnishee was daily receiving money for freight to go over defendant's road, and some of which money was in the possession of garnishee at the time of service of garnishee process. It may be true, as there held, that a railroad company incorporated under the laws of another state, operating a railroad in this state with the assent of the legislature, is liable to the process of garnishment, and that such process may be served as upon domestic corporations, but it can hardly be claimed that such laws can be made to reach property outside of the state. In the cases of B. O. R. R. Co. v. May, 25 Ohio St., 347, and Rocke v. Raney, 15 Bull., 333, cited by plaintiff in error, there is nothing to indicate that personal service was not made upon the defendants in attachment, while in the case of Cross v. Brown, 33 Atl. Rep., 147, it distinctly appeared that personal jurisdiction had been acquired over the defendants.

In the case of Central Trust Co. v. Chattanooga R. & R. Co., 68 Fed Rep., 685 (Clark, J., July 11, 1895) C, the question arose whether debts due to a citizen of Georgia by the receiver appointed therein, of a railroad which extended into Tennessee, could be garnisheed in Tennessee, and it was held that they could not. The court says, pages 687 and 688: "The garnishee as well as the principal debtors, being non-residents, and the debts payable in another state, the question arises, has he court jurisdiction (there being no personal service) by seizure of the property of the non-resident? In considering this question, it is to be con-

stantly borne in mind that garnishment is a form of attachment. * *

It being essential that, in the absence of personal service within the jurisdiction, an actual seizure of, or levy on, property of the absent defendant within the jurisdiction be had, and that until this is done the jurisdiction is not established, and no substituted service authorized, the question of the situs of the property or res is one of paramount importance."

And on page 693: "In Railroad v. Barnhill, importance is apparently attached to the fact that the principal debtor might have come to Tennessee and sued the company for his wages in the courts of Tennessee But the action on any debt is transitory, and suit may be maintained in any jurisdiction where process can be served on the debtor. This is a question quite apart from the situs of the debt, where seizure of property takes the place of regular process as the basis of jurisdiction. In cases like this the question is not where the plaintiff may sue, but where the defendant's property is for the purpose of levy in the absence of personal process served."

This case is seemingly quite in point, since both the garnishee and principal debtor were non-residents, and the place of the payment of the debt was in another state. In the case of Douglass v. Phoenix Insurance Co., 138 N. Y., 209, a New York corporation was indebted to a citizen of New York. An attempt was made in Massachusetts to garnish this debt, and process was served upon the agent of the insurance company there, and this fact was set up as defense in a suit brought on the debt in the state of New York. A demurrer to that defense was sustained in the court below and that judgment was affirmed by the court of appeals. The court, Andrews, C. J., in deciding the case, says: "But we repeat, no court can acquire jurisdiction in attachment proceedings unless the res is either actually or constructively within the jurisdiction, and we are of the opinion that the attempt to execute an attachment in Massachusetts upon the debts owing to

the plaintiff by the insurance company, by serving upon the agent of the corporation there, and without having acquired jurisdiction of the plaintiff, must fail, for the reason that the debtor, the insurance company, was in no just or legal sense a resident of Massachusetts, and had no domicile there, and was not he agent of the plaintiff, and that in contemplation of law the company and the debt were, at the time of the issuing the attachment, in the state of New York, and not in the state of Massachusetts."

In Atchison T. & S. F. Co. v. Maggard, 39 Pacif. Rep., 985 (March 11, 1895), the case was decided on the ground that a claim of a resident of Kansas against a railroad company of that state which extended into Colorado, and had an agent there, "was not property in Colorado in contemplation of law, and that the court, through attachment and garnishment proceedings, could obtain no jurisdiction, whatever over it."

In Renier v. Hurlbut et al., 50 N. W. Rp , 783 (1891), the supreme court of Wisconsin held that an Illinois court could not acquire jurisdiction by garnishment process served on an Illinois agent of a Massachusetts insurance company over a debt owed by that company to a resident of Wisconsin, who had obtained a judgment against the insurance company in Wisconsin.

In Illinois Cent. R. Co., et al. v. Smith, 12 Southern Rep., 461 (1893), suit was brought against a railroad company for wages earned in Mississippi where both parties resided, and the company pleaded a garnishment in Iowa. This defense was not sustained, the supreme court of Mississippi holding that the Iowa court could not acquire jurisdiction of the debt. The court say, on page 462, "Furthermore, it is demonstrably certain that the situs of the debt sued for in this action is in Mississippi. The creditor and debtor are both resident here. The contract creating the debt was made here. By its terms payment was to be made here. The garnishee in the foreign attachment pro-

ceedings is resident here. * * * In this case the debt is not within the jurisdiction of the foreign court, but here, at the residence of the creditor, and the place of payment under the control of its creation."

The supreme court of Nebraska has adopted the same rule in Wright v. C., B. & O. R. R. Co., 19 Neb. 175 (1886), and American Central Insurance Co. v. Hettler, 37 Neb., 849 (1893).

The doctrine is forcibly stated in the leading case of Louisville and Nashville Railroad Co. v. Dooley, 78 Ala., 524 (1885). This case was followed in the same court in Ala. Great Southern Railroad Co. v. Chumley, 92 Ala., 317 (1890), in which this language is used on page 319: "Garnishment is a species of proceeding in rem, in the nature of a sequestration of the debtor's effects. Unless the property is within the jurisdiction of the court issuing the garnishment, so that it may be seized, jurisdiction neither of the res, nor the person, can be acquired. As a general rule, a person cannot be subjected to garnishment by the courts of a state in which he may be temporarily, different from that of his domicile, unless he has property of the debtor in his possession, or owes him a debt payable in such state."

Another leading case in support of the doctrine is that of the Missouri Pacific Railroad Co. v. Sharitt, 43 Kas,. 375 (1890). That was a case in which the railroad company was a Missouri corporation doing business there and also in Kansas, where it became indebted to Sharitt for labor. In a suit against the company it set up a defense of a garnishment of the debt in Missouri. The defense was held not good, on the principle stated by Valentine, J., p. 379, that "The situs of a debt is either with the owner thereof, or at his domicile, or where the debt is to be paid; and it cannot be subjected to a proceeding in garnishment anywhere else."

In that case the garnishment proceedings were brought in the state of the debtor's origin and domicile, but that fact had no effect upon the de-

cision, and could have no effect, in the reason of the thing, for the situs of the debt being fixed outside of the state of Missouri, it was impossible for the courts of that state to acquire jurisdiction over it in any way.

Perhaps the rule is quite as well stated in Drake on Attachment, 5th Ed., section 474, as anywhere else:

"In this country, the question has been repeatedly presented, and the uniform tenor of the adjudications establishes the doctrine, that whether the defendant reside, or not, in the state in which the attachment is obtained, a non-resident can not be subjected to garnishment there, unless, when garnished, he have in that state property of the defendant in his hands, or be bound to pay the defendant money, or to deliver to him goods, at some particular place in that state."

Ney v. Liscombe, 21 Pick., 26: Green v. Farmers' and Citizens' Bank, 25 Conn., 452; Sawyer v. Thompson and Trustee, 24 N. H., 510; Straus v. Chicago Glycerine Co., 46 Hun., 216 (1887), and 108 N. Y., 64 (1888); Tingley v. Bateman, 10 Mass., 350; Missouri Pacific Ry. Co. v. Maltby, 34 Kas., 125; The Terre Haute and Indianapolis Railroad Co. v.. Baker, 122 Ind., 433; Baylies v. Trustees of Houghton Co., 15 Vt., 626; Fielder v. Jessup, 24 Mo. App., 91; Keating v. Am. Refrigerator Co., 32 Mo. App., 293.

In a recent decision in the United States court of appeals for this circuit, in Reimers v. Seatco Manf'g Cc., 70 Fed. Rep., 573 (decided October 8, 1895), there is an instructive review of the law.

In that case an attempt was made, in a suit brought in a Michigan court by a citizen of Chicago, to garnish a debt due to the Seatco Manufacturing Co., a corporation under the laws of the state of Washington, from the Michigan Peninsular Car Co., a corporation of the state of Illinois, having an office and place of business in Michigan, where it was properly served with garnishee process under the laws of that state. The debt sought to be reached was payable in the state of Washington. In the lower court the defendant moved to quash the writ of garnishment, and dismiss for want of jurisdiction, which motion was granted, and that judgment was affirmed by the court of appeals.

An examination of the acts of Michigan in regard to foreign corporations (Public acts, Mich., 1895, page 585), and of those relating to garnishment of such corporations, (Howell's An. Statutes of Mich., Supp., 183-1890, sections 8058, 8059 and 8086), will show that under those laws the right to garnishee such a corporation is given in language more direct than that used in the Ohio garnishment statutes.

Judge Taft, in announcing the opinion of the court, thus clearly states the law:

"The question in this suit is whether in a suit brought by a resident and citizen of Illinois against a resident and citizen of the state of Washington in the state of Michigan, a court of the latter state can acquire jurisdiction in rem, to pronounce judgment against the non-resident defendant to the extent of a debt owed to the defendant by a corporation resident and citizen of Illinois doing business in Michigan, and liable by the laws of Michigan to the service of process in garnishment in that state. The question of jurisdiction is raised by the defendant against whom such a judgment is sought. It may be conceded that under the statutes of Michigan a corporation of another state which assumes to do business in Michigan subjects itself, through its agents in that state, to service of process by garnishment. But this does not determine the question whether a creditor of such a corporation is affected by this fact so that the debt owing is given a locality and situs within the state lines of Michigan such as to permit the courts of Michigan, under general principles of international law and the constitution of the United States, to seize the debt. The debt was not payable in Michigan, but in Washington. We conceive it to be well settled by authority that while, generally speaking, the situs for a debt is constructively with the creditor to

whom it belongs, it is within the competence of the sovereign of the residence of the debtor, by reason of its control over its own residents, to pass laws subjecting the debt to seizure within its territorial sovereignty. We also conceive it to be well settled that, even if the debtor is not a resident of the sovereignty under which garnishment is attempted, such sovereignty still may subject the debt to its process and constructive seizure if the debtor is personally within the service of its process and the debt is payable within its territory. In either of the cases above mentioned, if a judgment is rendered against a garnishee for the debt thus constructively seized in favor of the plaintiff, the satisfaction of the judgment will be pro tanto a bar to a recovery against the garnishee on the original debt in any jurisdiction where the creditor seeks to recover it. But we are of the opinion that a non-resident creditor cannot have his property in the debt seized in a state to which the debtor may resort, not for purposes of residence, but merely for the purpose of doing business through agents, when the claim arose on a contract not to be performed within the state, and the debtor does not reside therein. But it is said that, if the debtor is a corporation, and seeks to do business outside of the state of its incorporation, the state to which it may send its agents for this purpose may impose any requirement whatever as a condition precedent to its doing business there, and, therefore, that it may require it to submit to judgment in garnishment for a debt owing by it to a non-resident, on the suit of a non-resident, though payable in another state. The right of a state to impose conditions upon foreign corporations doing business therein is not unlimited. * * * If, as we have already found, the debt to be garnisheed was not brought within the state by presence of the debtor corporation through its agent, then a condition that the corporation must be subject to garnishment process as if the debt were within the state's jurisdiction would have one of two results: It would either subject the corporation to the probability of a double recovery for the same debt, or it would compel the creditor, a non-resident, whose person and property are both out of the jurisdiction of the state, to submit to a judgment against him, rendered without notice of any kind to him. Either result would seem to be inconsistent with the rules of public law securing the jurisdiction and authority of each state from encroachment by all the others, and with that principle of natural justice forbidding condemnation without opportunity for defense. "At all events, there is nothing in the garnishee statute of Michigan expressly requiring a foreign corporation to submit to a judgment in garnishment in such a case. And the mere provision that such a corporation shall be generally subject to garnishment is not to be interpreted as imposing a liability, power to impose which is rendered doubtful by the considerations already stated. It is easy to conceive of many cases where a foreign corporation may be garnisheed, in which, by all the rules of public law, the debt thus sought to be seized is within the territorial jurisdiction of the state in which process is issued. Such cases may well satisfy the provision of the Michigan law for garnishment against foreign corporations."

Nor is it important that the garnishee is a West Virginia corporation, and that, in accordance with the laws of that state and the provisions of its charter, it has its principal office in Ohio. A corporation can have but one residence. It is the creature of the state which created it, its recognition in another state is purely a matter of comity, and while laws may be made and acted upon which provide the conditions upon which foreign corporations are permitted to do business in a state, those laws must be taken as merely granting a license so to do business, and not as changing the citizenship of such corporations.

The law on this subject has been well settled by repeated adjudication of the supreme court of the United States. Bank of Augusta v. Earle, 13

Peters, pp. 519, 588; The Lafayette Insurance Co. v. French, 18 How., 404; Paul v. Virignia, 8 all., 168; Tne Insurance Co. v. Francis, 11 Wall, 210; Railrcad Co. v. Harris, 12 Wall., 65; Shaw v. Quincy Mining Co., 145 U. S., 444 (1892).

In this last case Mr. Justice Gray says, on page 40: "* * * But always retaining the idea that the legal existence, the home, the domicil, the habitat, the residence, the citizenship of the corporation can only be in the state by which it was created, although it may do business in other states whose laws permit it."

This principle, too, is clearly stated in Reimers v. Seatco Manufacturing Co. 70 Fed. Rep., 573, where it is said, page 577:

It is abundantly established by the decisions of the supreme court of the United States that, no matter what business a corporation does in another state, its residence is exclusively in the state of is creation."

There is a line of cases, in which railroad companies operating roads passing through different states, have been incorpurated under the laws of those states, respectively, and thus become domestic corporations in each of said states. The rule which governs in those cases is stated with great clearness by Mr. Justice Miller, in Pennsylvania Railrcad Co. v. St. L. A. & Terre Haute R. R. Co., 118 U. S., 290:

"To make such a company a corporation of another state, the language used must imply creation, or adoption in such form as to confer the power usually exercised over corporations by the state, or by the legislature, any such allegiance as a state corporation owes its creator. The mere grant of privileges or powers to it as an existing corporation, without more, does not do this, and does not make it a citizen of the state conferring such powers."

These cases, however, can have no bearing on the one at bar, which comes under the general statutes relating to corpprations. These acts provide (91 O. L., 272) that upon the performance of certain conditions by

such foreign corporations as have a part oral of their capital or plant in the state, the secretary of state shall charge and collect from each of said corporations a certain per cent. of the proportion of its authorized capital stock represented in the state, for the privilege of exercising its franchises in Ohio, and shall issue to it a certificate that it is authorized to do business therein. These acts are permissive only, and it cannot be well claimed that the legislative intent was to give to such corporations the status of domestic ccrporations.

The court is of the opinicn that a debt which arose and is payable outside of a state, and is due from one non-resident corporation to another non-resident corporation thereof, is not subject to process of attachment and garnishment issued by courts of that state.

The judgment cf the court in special term will be affirmed.

Herron, Gatch & Herron, for the Motion.

Thornton Hinkle, contra.