# SUPREME JUDICIAL COURT,

FOR THE

## WESTERN DISTRICT.

## 1859.

## COUNTY OF YORK.

AMOS FELCH *versus* ORRIN BUGBEE & *al.* AND FRANCIS O.
THOMAS & *al.*, *Trustees.*

A discharge of a debtor, under the insolvent laws of Massachusetts, will not
bar an action in the courts of Maine, instituted by a citizen of Maine against
such debtor who resides in Massachusetts, although the contract was made
and, by its terms, to be performed in Massachusetts.

The indorsement of a negotiable note is a new contract between the parties;
and, where such note was made in Massachusetts by a citizen of that State,
and payable to another citizen of such State, " at any bank in Boston," and,
by him indorsed to a citizen of Maine, before maturity and before proceed-
ings in insolvency, the rights of such indorsee are not affected by a discharge
of the maker in Massachusetts under the insolvent laws of that State.

It is citizenship, and not the place of making or of performance, that deter-
mines the legal rights of the parties.

An assignment of such debtor's property by the officers of the law of Massa-
chusetts, under the provisions of the insolvency Act, will not operate upon
the debts or property in this State, so as to defeat the attachment of a cred-
itor who is a citizen of Maine, made subsequently to such assignment.

ON AGREED STATEMENT OF FACTS.

THIS was an action of ASSUMPSIT, upon two promissory
notes signed by Bugbee, Hidden & Co., the principal de-
fendants, payable to their own order and by them indorsed.

One is dated Boston, August 27th, 1856, payable in eight months for $586,67, value received of Ball & Moore. The second is dated Boston, Sept 3d, 1856, for $1386,88, payable in eight months, at any bank in Boston, value received of Day, Frost & Kimball.

The defendants relied upon their discharge from their debts, under the insolvency laws of Massachusetts.

At the time said notes were given, the defendants were, and ever since have been citizens of Boston. They were merchants, under the firm name of Bugbee, Hidden & Co. The notes in suit were made in Boston by the defendants, and by them there given and indorsed to citizens of that place, who, at Boston, negotiated and sold them before maturity to the plaintiff, on the 24th day of April, 1857.

The defendants as partners, and also in their respective separate capacities, on May 12th, 1857, made their petition for the benefit of the provisions of the law of Massachusetts for the relief of insolvent debtors. A due and legal course of proceedings was had upon their petition, and assignees were legally appointed; and, on the first day of December, 1857, the said defendants obtained certificates of discharge.

The writ in this case was served upon the trustees on May 16th, 1857.

The case was elaborately argued by

*L. S. Moore* for the plaintiff, and by

*Swasey & Chisholm* for the defendants.

The opinion of the Court was drawn up by

KENT, J.— The questions between the plaintiff and the principal defendants relate to the effect of a discharge in insolvency, granted to the defendants by the proper tribunal under the laws of Massachusetts. It appears from inspection of the papers, that the discharge was regularly granted, and, by its terms, includes the contract as set forth in each of the notes in suit. The question arises, whether such a discharge is effectual to bar this action.

Both notes were made in Boston, payable to defendants' own order, signed and indorsed by them to citizens of Massachusetts, who, at Boston, negotiated and sold them to the plaintiff, before maturity, and before the commencement of proceedings in insolvency. The first of these notes contains no specification of any place of payment ; the second is payable at any bank in Boston.

The constitutionality, effect and limitations of the insolvent laws of individual States have been discussed very thoroughly by courts in different States and by the Supreme Court of the United States. Nearly all the questions which can arise have been determined, and it would be but a useless effort to recapitulate the arguments and the reasons on which these decisions are based, or to cite a cloud of authorities already familiar to the profession. It may be useful, however, to state the most prominent of the points that may now be considered as settled.

1. That a State has the constitutional power to pass insolvent laws in the nature of bankrupt laws, by which a debtor may be discharged from subsequent contracts, subject to certain limitations. *Ogden* v. *Saunders,* 12 Wheat., 213, and cases cited under the following points.

2. That such discharge may be granted from all contracts made or existing between citizens of the State which enacted the law and whose tribunals granted the discharge. *Stone* v. *Tibbetts,* 26 Maine, 110. And a subsequent change of residence and citizenship, after making the contract, will not affect the validity of a discharge obtained by defendant before removal. *Stevens* v. *Norris,* 10 Foster, (N. H.,) 466 ; *Brigham* v. *Henderson,* 1 Cush., 430.

3. That such discharge will not bar an action on a contract between a citizen of such State and a citizen of another State, where the contract is not by its express terms made payable or to be performed in the State granting the discharge. *Palmer* v. *Goodwin,* 32 Maine, 535 ; *Savage* v. *Marsh,* 10 Met., 594 ; *Fisk* v. *Foster,* 10 Met., 597 ; *Braynard* v. *Marshall,* 8 Pick., 194. And this rule applies to cases of such contracts

Felch v. Bugbee.

*made in* such last named State with a citizen of another State, where no place of performance is named. *Ilsley* v. *Merriam*, 7 Cush., 242; *Clark* v. *Hatch*, 7 Cush., 455; *Scribner* v. *Fisher*, 2 Gray, 43.

4. That a negotiable contract, payable generally, made between citizens of the State granting the discharge, but indorsed *bona fide* to a citizen of another State, before maturity and before proceedings instituted in insolvency, is a new contract between the parties, and a suit thereon is not barred by such discharge. *Banchor* v. *Fisk*, 33 Maine, 316; *Houghton* v. *Maynard*, 5 Gray, 522; *Savage* v. *Marsh*, 10 Met., 594; *Anderson* v. *Wheeler*, 25 Conn., 603.

5. That no peculiar rights are acquired or lost by the character of the forum in which the suit is determined, but the same principles apply, whether the case is pending in the State Court where the debtor resides and obtained his discharge, or in the State of the creditor's residence, or in the U. S. Courts. *Cook* v. *Moffatt*, 5 Howard, 309.

6. That a contract, which is payable generally, without any specified place, although dated and given at a place within the State, is not barred by the discharge, if the contract is with a citizen of another State. *See cases before cited.*

The first note falls clearly within the class of cases which are not barred by the proceedings in insolvency. The plaintiff is and has been a citizen of Maine; the note was indorsed to him when such citizen, before maturity, or the commencement of the proceedings in insolvency; and is not payable at any particular place, in or out of Massachusetts.

The second note presents another question, which has not been determined with the same unanimity as those before stated. This note is made payable at any bank in Boston; and it is contended that this stipulation takes the case out of the principles of the former decisions, and makes it subject to the discharge offered in evidence; and that a contract, although with a citizen of another State, is barred if it is payable in the State where the debtor resides and has obtained his discharge.

The other questions being disposed of, the only remaining one is, whether the fact that the note is made payable in Massachusetts gives efficacy to the discharge, although the contract is with a citizen of another State.

We will first consider the authorities bearing on this precise point.

In *Scribner* v. *Fisher*, 2 Gray, 43, a majority of the Court in Massachusetts decided that such a note is barred by a discharge in insolvency in that State. This decision has been re-affirmed in several cases decided subsequently in that Court. 5 Gray, 539, and note. No reasons are assigned in the subsequent cases. They rest on the case of *Scribner* v. *Fisher*, in which METCALF, J., gave a dissenting opinion. But this is now established as the doctrine of that Court.

In the case of *Demerit* v. *Exchange Bank*, (Law Reporter, March, 1858,) Judge CURTIS held "that it is not competent for the State of Maine, under the constitution of the United States, to pass any law discharging or suspending the right of action on a contract made with a citizen of another State by a citizen of Maine. This was settled in *Ogden* v. *Saunders*, 12 Wheat., 213, and *Boyle* v. *Zacharie*, 6 Peters, 348." "It is urged," says Judge CURTIS, "that, where the contract *is to be performed in the State*, it is not within *Ogden* v. *Saunders*. It has been so held in *Scribner* v. *Fisher*, 2 Gray, 43. But I cannot concur in that opinion. I consider the settled rule to be, that a State law cannot discharge or suspend the obligation of a contract, though made and to be performed within the State, when it is a contract with a citizen of another State. Such was Justice STORY'S understanding of the decisions of the Supreme Court of the United States in which he took part. *Springer* v. *Foster*, 2 Story, 387."

Mr. Justice STORY has also expressed the same view of the law in his elementary works. In his "Conflict of Laws," § 341, he says, "that a discharge under any law of the State where made, will not operate to discharge any contracts except such as are made between citizens of the same State." *Very* v. *McHenry*, 29 Maine, 214.

The Court of Appeals in New York, in 1852, in the case of *Donnelly* v. *Corbett*, 3 Selden, 500, had this precise question before them — the contract being payable in South Carolina, where the debtor resided and was discharged — the creditor being of New York. The Court held that an action on the contract was not barred by a discharge. The ground of the decision was, that a discharge, under a State insolvent law, of a debtor from his debts contracted after its passage, is valid as respects contracts between citizens of the State, but invalid as to all contracts where a citizen of another State is a party. The same doctrine is found in *Poe* v. *Duck*, 5 Maryland Rep., 1.

In *Anderson* v. *Wheeler*, 25 Conn., 613, the case presented the same question as the one before us; — the original parties to the note were both of New York — it was indorsed before due to a citizen of Connecticut — it was payable at a bank in New York, where the payee obtained his discharge in insolvency. The Court refers to the case of *Scribner* v. *Fisher*, but dissent from it, and decide that the fact of the place of payment being designated does not take it out of the rule as laid down in Judge JOHNSON'S opinion, concurred in by a majority of the Court, in *Ogden* v. *Saunders*.

We have also the opinion of Mr. Justice BALDWIN of the Supreme Court of the United States, in the case of *Woodhull* v. *Davis*, Baldwin's Rep., 300. His decision is based on the position that bankrupt or insolvent laws can have no extraterritorial effect on persons beyond the limits of the State or nation.

The decisions which are in opposition to the cases in Massachusetts, rest upon the understanding of the doctrine in the original case of *Ogden* v. *Saunders*. All the courts, including that of Massachusetts, state and national, agree, as a starting point, that whatever is clearly and expressly decided in that case is to be taken as settled, although the reasoning may not be entirely satisfactory. That case, indeed, resembles the works of some ancient authors, where the commentaries, and doubts, and explanations, outrun the text and over-

whelm it, leaving the bewildered student " in wandering mazes lost"—oft-times the " interpreter being the harder to be understood of the two."

Mr. Justice WOODBURY, in the case of *Town* v. *Smith*, 1 Wood. & Minot, 137, discusses fully the authorities bearing on the whole question, and, although doubting some of the views, and the soundness of the reasoning on which they are based, yet feels bound by the authority of the cases in the Supreme Court of the United States, which he understands as establishing the test of citizenship of the parties.

The discussions and decisions have, however, resulted in bringing about a general agreement as to all the points first enumerated—leaving this single point of the place of performance yet, in a measure, in controversy.

The Supreme Court of the United States was called upon to revise and interpret the leading case of *Ogden* v. *Saunders*, and the Judges gave their opinions on the various questions raised, in *Cook* v. *Moffatt*, 5 Howard, 309. Whilst there is an almost painful difference of opinion, on the question of the soundness of the grounds assumed or reasons assigned, the Court concurs in fixing certain principles as finally established. The one bearing on the exact point before us is thus stated. " A certificate of discharge under an insolvent law will not bar an action brought by a *citizen* of another State, on a contract with him."

This is the state of the authorities on the subject. The preponderance seems clearly against giving efficiency to the discharge in a case like this.

If we leave the authorities and seek beyond them for the reasons on which any rule on this subject is founded, we find two trains of argument, which, starting from different premises, lead to directly opposite results. The whole controversy on this point seems to turn upon the question whether it is the contract itself, including the place of making and of performance, and the *lex loci contractus*, that is to govern, or whether the *citizenship* of the contracting parties controls,

without reference to the nature or place of making or performance of the contract.

It is urged by those who favor the first view, that, when a foreigner, or a citizen of one State, voluntarily comes into another State, and there makes a contract with a citizen of the latter State, not by its terms to be performed elsewhere, the *lex loci* attaches to the contract, and must not only govern its construction, but its validity, and the grounds or facts by which it may be discharged. The argument is, that every contract made has relation to the existing law of the State — and, (to apply the doctrine directly to the case before us,) that, when such a contract is made within the territorial jurisdiction of Massachusetts, the liability to a discharge under the existing insolvent laws becomes a part and parcel of that contract, incorporated into it, or attached to it, as a condition or limitation, and goes with it everywhere, whoever makes or becomes a party to it, at any time. In this view, citizenship is of no consequence. The ground on which insolvent laws of a State, which allow a full discharge of a contract, are sustained against the objection that they impair the obligation of contracts, and thus violate the provision of the U. S. constitution, is that above stated, viz. : that the liability to such discharge is either expressly or tacitly understood by the parties, as a part of, or a fixed attendant upon all contracts made under the overshadowing canopy of the statute of insolvency; and that any citizen of another State, who comes voluntarily within the territory thus embraced, must be held to contract with reference to the law, and that the enforcement of it would not violate his rights.

If this were a new question, this view of the case would certainly be entitled to great consideration. It will, however, be observed, that the strength of this argument rests upon the doctrine of the *lex loci contractus*, the place of *making* the contract, not the place of *performance* only or chiefly. It is the fact of making a contract, on a territory governed by a certain law, that incorporates the law into it,

if it is thus incorporated. And it would seem, that if it is not citizenship but place, that is to control, those who favor this view should have taken their stand upon the ground that every contract *made* in the State, and not expressly to be performed elsewhere, must be governed by the existing law. But this has been given up by all the Courts. Even the Court in Massachusetts admits that the fact that the contract was *made* in that State cannot bar recovery, after a discharge in insolvency. The place of making is treated as immaterial. *Dinsmore* v. *Bradley*, 5 Gray, 487; *Houghton* v. *Maynard*, 5 Gray, 552; 10 Met., 594, and numerous other cases. The same Court has decided, that a contract *made* in Georgia, and *there to be performed*, between two citizens of Massachusetts, would be barred by a discharge in Massachusetts. *Marsh* v. *Putnam*, 3 Gray.

The question naturally arises, why the place of *performance* of a contract should subject it to the operation of a discharge, when the place of its formation would not? If the place of performance is material, and must control, it must be because the party out of the State voluntarily assented to the condition fixing the place, thereby bringing the contract under the law of the State. The same reasoning would apply to the making of a contract, which might be performed in the State. When the fact of the place of making the contract is not regarded as essential, the citadel, as it seems to us, is surrendered, and it is in vain to attempt to make a stand upon the place of performance alone.

It is conceded by the Court in Massachusetts that the forum makes no difference; that the same rule applies everywhere. And, after a careful consideration of the reasonings and decisions of the Court on this vexed subject, we can only say, that, if the question were an open one in all respects, we might incline to the doctrine that the place of making and the place of performance should control, on the grounds before stated, rather than the fact of naked citizenship. Yet we are forced to the conclusion, that a different rule has been finally established by the Supreme Court of the United States, and

concurred in by most of the State Courts, and we are not disposed to depart from the rule thus established. That rule is the one found in *Cook* v. *Moffatt*, 5 Howard, before cited. It rests entirely upon the citizenship of the party, and not at all upon the place of making or performance. It is the result of that train of reasoning which regards the insolvent laws of a State as local, having no extra-territorial force so as to act upon the rights of citizens of other States; and which holds that, as between citizens of the State, the discharge will bind them, as to all posterior contracts, wherever made or wherever to be executed;—and, as to citizens of other States, will not discharge any existing contract, although made or to be performed in the State granting the discharge. Or, as expressed by the Court, the discharge is not a bar "when the *action* is brought by a *citizen of another State.*" This rule is broad enough to exclude all questions arising from either the place of making, or place of performance. It rests entirely on the citizenship of the parties; and treats all other matters as immaterial.

*The plaintiff must have judgment on both notes.*

The remaining question relates to the trustees, who have disclosed indebtedness to the defendants, and notice to them (the trustees) of an assignment made by the Judge of Insolvency in Massachusetts to the assignees, who now interpose their claim. By agreement of the parties all the questions are submitted to the Court.

It was decided in *Fox* v. *Adams*, 5 Greenl., 245, that a general voluntary assignment *by the debtor*, for the benefit of his creditors, made in another State, will not be allowed to operate upon property in this State, so as to defeat the attachment of a creditor residing in Maine. This has been the established law of our State.

*A fortiori*, an assignment by the officers of the law, under a bankrupt or insolvent law of another State, cannot have that effect. It is now the well settled American doctrine, that an assignment by commissioners, or other officers, of a debtor's

Felch *v.* Bugbee.

personal property, under a foreign bankrupt law, does not operate as a legal transfer of that portion that is within another jurisdiction, as against the creditor of the bankrupt there residing, who interposes his claim. *Blake* v. *Williams & trustees*, 6 Pick., 306; Story's Conflict of Laws, § 410; Kent's Com., vol. 2, 405; *The Watchman*, 1 Ware, 232; *Town* v. *Smith*, 1 Wood. & Minot, 137.

The claim of the assignees cannot prevail against the attachment of the plaintiff, the plaintiff and all the trustees being citizens of Maine.

Judgment for the plaintiff for amount of both notes and legal interest.

Trustees charged for amount disclosed, viz. : —

| | |
|---|---|
| Francis O. Thomas, | $622,96 |
| Samuel Hanson, | 259,20 |
| Adams & Co., | 195,66 |
| Hamlin & Boynton, | 757,75 |

There is annexed to the papers a copy of the disclosure of Jeremiah M. Mason; but the case, as made up, refers to the determination of the Court the questions arising under the disclosures of the four trustees, first above named, only. It would appear, from the disclosure of Mason, that he should be charged for $700,16, and for $296,89, making the sum of $997,05, if he is to be charged in this case.

The legal costs of all the trustees to be allowed to them respectively.

TENNEY, C. J., and RICE, APPLETON, GOODENOW, and DAVIS, JJ., concurred.*

---

* CUTTING, J., who was not present at the argument of this case, concurred in the opinion of the Court, in the case of *Snow* v. *Gillion & als.*, argued at the Law Term, 1860.