NATHAN A. KNOWLES *vs.* MADISON BEAN, and another.

Kennebec.    Opinion March 19, 1895.

*Deed.    Description.*

A description in a deed, of "all of a certain tract or parcel of land lying in Belgrade, being part of lot numbered 192, being part of the southerly quarter, supposed to be five acres, more or less, and all the land which I own to the west of Clark's pond, so-called, being the same pond that James Katon dug a drain to," conveys only that part of the southerly quarter of lot 192, which lies in Belgrade, although the Belgrade line is some distance westerly of the west line of Clark's pond and the grantor owned land between the Belgrade line and Clark's pond, which was in another town.

ON REPORT.

This was an action of trespass *quare clausum fregit* for entering land, to which the plaintiff claims title, situate partly in the town of Belgrade and partly in Sidney, Kennebec county, and there cutting down and carrying off a number of pine trees thereon growing.

The defendants pleaded the general issue, and Madison Bean, one of the defendants, in addition, by way of brief statement, pleaded title in himself to the land on which said trees were growing.

It was admitted by the plaintiff that the acts complained of, as constituting the trespass, were committed on that portion of the land claimed by the plaintiff which lies in Sidney and which is so described in the writ.

On the other hand, it was admitted by the defendants that they cut the trees upon that portion of the land described in the writ, and claimed by the plaintiff, which lies in the town of Sidney ; and they seek to justify their acts under claim of title in Madison Bean ( one of the defendants ) to that portion of the land described in the writ which lies in the town of Sidney.

The case is stated in the opinion.

A chalk plan showing the locus and surroundings is appended.

*Anson M. Goddard*, for plaintiff.

The plaintiff stands in shoes of Braley as grantee, and defendant in place of Crosby as grantor. The deed of Crosby to Braley must be construed most strongly against the grantor and against the defendant. It does not state that the land is wholly in Belgrade, nor mention the town of Sidney, nor refer to the town line, a monument. No intention is expressed to exclude land in Sidney. Town line not intended as a boundary, its location not then known. Call, in deed, names Clark's pond as eastern boundary, which is inconsistent with town line being intended. The failure to mention the fact that part of the land is in Sidney will be treated as an omission or mistake. *Tenney* v. *Beard*, 5 N. H. 58 ; *Wilt* v. *Cutler*, 38 Mich. 189. Where the calls are inconsistent, the construction favorable to grantee will prevail. *Foster* v. *Foss*, 77 Maine, 279 ; *Vance* v. *Fore*, 24 Cal. 435 ; *Hall* v. *Gittings*, 2 Har. & J. 112 ; *Piper* v. *True*,

36 Cal. 606; *Bonney* v. *Miller*, 18 Iowa, 460; *Nutting* v. *Herbert*, 35 N. H. 121; *Miller* v. *Cherry*, 3 Jones Eq. (N. C.) 24. The words "all land, &c., to the west of Clark's pond" makes that pond a monument.

Counsel also cited: *Tyler* v. *Fickett*, 73 Maine, 410; *Esty* v. *Baker*, 50 Maine, 325; *Knowles* v. *Toothaker*, 58 Maine, 172; *Ames* v. *Hilton*, 70 Maine, 36; *Pierce* v. *Faunce*, 37 Maine, 63; *Williams* v. *Western R. R.* 50 Wis. 71; *Harlow* v. *Fisk*, 12 Cush. 302; *Friedman* v. *Nelson*, 53 Cal. 589.

The plaintiff has shown by a fair preponderance of evidence that he owns and is entitled to hold to the southern extremity of Pond No. 1, from which point it is immaterial by what course the line is drawn to the south line of the lot, because even a due

west course from the south extremity of the pond will give plaintiff the land on which most if not quite all the disputed trees were cut, and therefore entitles him to recover in this action.

*Emery O. Beane and Fred Emery Beane,* for defendants.

SITTING : PETERS, C. J., WALTON, FOSTER, HASKELL, WHITE-HOUSE, STROUT, JJ.

STROUT, J. This is an action of trespass for cutting trees on land claimed by plaintiff. Defendants admit the cutting, but justify under claim of title to the land, where they were cut, in Madison Bean, one of defendants. The disputed premises are a part of lot numbered 192, lying partly in Belgrade and partly in Sidney. After the testimony was all in, the presiding judge ordered a nonsuit, and thereupon the parties reported the case for the decision of the law court, with the agreement that if that court should hold the order of nonsuit to be improper, judgment should be rendered for plaintiff for eighty dollars.

It appears that prior to February 26, 1813, lot 192 had been divided longitudinally, and on that day that William Crosby owned the whole of the southerly quarter of the lot. The line between Belgrade and Sidney crossed the premises in a north-easterly and south-westerly direction, leaving about one-third in Belgrade and about two-thirds in Sidney. There is a pond of considerable size extending from a point some distance north of the north line of lot 192, across the northerly half of the lot, and about one-half across the quarter next northerly of the Crosby quarter of the lot, the west shore of which lies approximately north and south, and being in Belgrade. The pond then narrows and continues in a southeasterly direction across the town line into Sidney, and approximately one-third across the width of the Crosby quarter. This pond is called by some of the witnesses Clark's pond, and by others Penny pond. Southerly of this narrowed extension of the large pond, is a small pond, called by some Wellman pond and by others Chamberlain pond, connected with the large pond by an artificial ditch. Wellman pond is mainly in Belgrade, but a small part of it is

in Sidney. The ditch between them is all in Sidney. The
cutting complained of was in Sidney, east of the ditch, and
westerly of the southeasterly end of the large pond.

Plaintiff derives his title through various *mesne* conveyances
from William Crosby under his deed to Ephraim Braley, dated
February 26, 1813. On January 15, 1815, William Crosby
conveyed to Pitt Dillingham, under whom defendant Bean claims,
all of the southerly quarter of lot 192 " save and except a small
parcel off the west end of the same which I conveyed to Ephraim
Braley." It follows that plaintiff owns all of the southerly
quarter of the lot which Crosby conveyed to Braley, and
defendant Bean owns all of that quarter except what was
conveyed to Braley. The description in the Braley deed, under
which plaintiff claims, is "all of a certain tract or parcel of land
lying in Belgrade, being part lot numbered 192, being part
the southerly quarter, supposed to be five acres, more or less,
and all the land which I own to the west of Clark's pond,
so-called, being the same pond that James Katon dug a drain to."

Of the many rules suggested by courts for the construction of
deeds, the most important and controlling one, when it can be
satisfactorily applied, was well stated by LIBBEY, J., in *Ames*
v. *Hilton*, 70 Maine, 36 : "The great rule for the interpretation
of written contracts is that the intention of the parties must
govern. This intention must be ascertained from the contract
itself, unless there is an ambiguity. . . . In ascertaining the
meaning of the parties as expressed in the contract, all of its
parts and clauses must be considered together, that it may be
seen how far one clause is explained, modified, limited or
controlled by the others."

Applying this rule to the deed from Crosby to Braley, very
little difficulty is experienced in ascertaining the intention of
the parties. Crosby knew his land was in the two towns of
Belgrade and Sidney, much the larger portion being in the
the latter town. He contemplated selling a small portion,
estimated to be about five acres, but which proves to be about
fifteen acres, from the west end of his land. His grant was all
of a parcel of land lying in Belgrade. What follows in the
deed is matter of description and identification :—" being part of

lot 192, being part the southerly quarter." The description thus far clearly is limited to that part of the lot which is in Belgrade. The concluding sentence, added as farther description and identification, "and all the land which I own to the west of Clark's pond," was not intended to enlarge the grant, but to make it more definite. The whole description very clearly indicates the intention to convey all that part of lot 192, which was in Belgrade. The reference to Clark's pond, which we are satisfied from the evidence was the large pond, marked No. 1 on the plan, did not make or intend to make the pond a boundary of the land conveyed, but was used in connection with other parts of the description to indicate more fully where the land in Belgrade, which was conveyed, was situated. It was part of the southern quarter of a certain lot; it was west of the pond, and was all in Belgrade. *Carville* v. *Hutchins*, 73 Maine, 229; *King* v. *Little*, 1 Cush. 443. This construction meets all the calls in the deed, and best comports with the intent of the parties. *Erksine* v. *Moulton*, 66 Maine, 281.

The plaintiff's claim, that his easterly line goes to the pond which is easterly of the Belgrade line, is attended with insurmountable difficulties. It ignores the terms of the grant of land in Belgrade. As the pond does not extend across the southerly quarter, how shall the line run from the pond to the southerly line of the quarter of lot 192? Shall it be an arbitrary line running southerly from the pond, or southwesterly to Wellman pond, or westerly to Belgrade line? The construction claimed by plaintiff fails to answer these questions, and leaves them all open to mere guess. Such construction is too loose and too hazardous to be adopted. No rule of law requires it. This is not a case like *Esty* v. *Baker*, 50 Maine, 330, where it is held that " if there be two descriptions of the land conveyed which do not coincide, the grantee is entitled to hold that which will be most beneficial to him ;" but falls rather within the rule approved in that case, that " if some of the particulars of the description of the estate conveyed do not agree, those which are uncertain and liable to errors and mistakes, must be governed by those which are more certain." The town line is a very certain boundary.

It is the opinion of the court that the deed from Crosby to Braley conveyed only so much of the southerly quarter of lot 192 as was within the town of Belgrade.   It is not disputed that all the residue of the southern quarter was conveyed by Crosby to Dillingham, through whom, by *mesne* conveyances, defendant Bean claims.   The cutting was in Sidney, and not upon plaintiff's land, unless he acquired title to the lands in some other way than from the conveyance to Braley.   His counsel ably argues that in the deed from Bachelder to the plaintiff, given in 1890, the second parcel therein described, purports to convey the disputed premises.   The boundaries given are the lands of various owners, and on one side by the pond.   There is no evidence in the case to indicate on the face of the earth where the lines of the various owners referred to are, and it is impossible from the deed itself to determine where the land in fact is.   Besides, there is no evidence that Bachelder had acquired title to any land except that conveyed by Crosby to Braley.   The evidence fails to show that plaintiff was ever in actual possession of any part of the lot east of the Belgrade line.

Whether, if it had been proved that the description in the Bachelder deed, which was a deed of warranty, covered the land where the trees were cut, the plaintiff could have maintained trespass against a wrong-doer, without title, it is not necessary to decide, as defendant Bean shows full title in himself to all of the southerly quarter of lot 192, which was that conveyed by Crosby to Braley.

It follows that the nonsuit was rightly ordered, and the entry must be,                                      *Nonsuit to stand.*