ROBERT L. LEACH, State Superintendent of Banking, Appellee, v. EXCHANGE STATE BANK OF STUART, Appellee; FRANK A. SCHMIDT, Intervener, Appellant.

**BANKS AND BANKING:** Insolvency—Purchase of Draft—Effect.
1 The purchase of a draft on a drawee which has ample funds of the drawer's is but the purchase of the credit of the drawer. In other words, the purchaser of such a draft voluntarily makes himself one of the *general* creditors of the drawer.

**BANKS AND BANKING:** Insolvency—Draft by Insolvent Drawer—
2 Effect. The rule that a trust relation is created by the act of an insolvent in drawing a draft which he knows will not be paid, has no application on a record revealing the fact that the payee of the draft long delayed presentation, and that, in the meantime, numerous drafts subsequently issued by the same drawer were paid by the same drawee.

Headnote 1: 7 C. J. p. 751. Headnote 2: 7 C. J. p. 751.

Headnote 2: 10 L. R. A. (N. S.) 928; 38 L. R. A. (N. S.) 255; 39 L. R. A. (N. S.) 563.

*Appeal from Guthrie District Court.*—J. H. APPLEGATE, Judge.

DECEMBER 14, 1926.

REHEARING DENIED APRIL 7, 1927.

The intervener, holding a claim against an insolvent state bank, asked that he be given a preference in the distribution of assets. From a judgment denying a preference he appeals.— *Affirmed.*

*Swan, Martin, Martin & Kringel,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Carl P. Knox,* for appellees.

VERMILION, J.—The essential facts are not in dispute. On April 2, 1924, the Exchange State Bank of Stuart had to the credit of the appellant, Schmidt, the sum of $2,280.53. This

**1. BANKS AND BANKING: insolvency: purchase of draft: effect.** was received through a bank in Omaha, and was the proceeds of cattle sold by appellant. The source of the credit, however, in view of subsequent events, is of no importance; nor is it at all material whether appellant was then a depositor in the Stuart bank. It is conceded that, on April 2, 1924, the appellant personally drew his check for the amount of such credit, and with that and $219.47 in cash or other checks procured the draft of the Exchange State Bank upon the Iowa National Bank of Des Moines for $2,500, payable to himself or order. On May 3, 1924, appellant presented at the Stuart bank a draft for $1,800, and received therefor $100 in cash and the draft of the Stuart bank on the same Des Moines bank for $1,700, payable to himself or order. Appellant retained these two drafts in his possession until after the Stuart bank closed its doors, on May 8, 1924, when he presented them to the Iowa National Bank, and payment was refused. The Stuart bank is insolvent, and is in the hands of the state superintendent of banking, as receiver, for liquidation. Appellant sought to have his claim for the amount of the two drafts so issued to him allowed as a preference. The claim was denied, and properly so.

I.   The transactions between appellant and the Stuart bank amounted to nothing more than the purchase by him of the drafts—the purchase, to that extent, of the credit of the bank. Instead of the cash to which he was then entitled, he, for purposes of his own, elected to take instead the bank's draft or order upon its correspondent for the amount. The relation between him and the bank was that of debtor and creditor, out of which no trust and no right to a preference arose.

We have recently had occasion to consider the rights of the parties to such a transaction, and have held that no right to a preference arises from the mere purchase of a draft. See *Leach v. Battle Creek Sav. Bank,* 202 Iowa 875; *Leach v. Mechanics Sav. Bank,* 202 Iowa 899; and *Leach v. Citizens' State Bank of Arthur,* 203 Iowa 782.

II.   It is claimed that the Stuart bank was insolvent when the drafts were issued, and that the facts of the case bring it

2. BANKS AND BANKING: insolvency: draft by insolvent drawer: effect. within the rule of *Whitcomb v. Carpenter,* 134 Iowa 227, where it was held that the act of a banker in taking money for a draft which he knew would not be paid, would give rise to a relation of trust. It appears from the record, however, that numerous drafts drawn by the Stuart bank on the Iowa National Bank after the purchase of the last draft in question were paid by the latter bank up to. as late as May 7th. It is clear that the drafts in question would have been paid, had they been promptly presented. There is nothing whatever in the record to justify the application of the doctrine of *Whitcomb v. Carpenter,* supra.

The appellant was clearly not a depositor of the amount of the drafts; and the judgment below, giving him the status of a general creditor, was proper, and it is—*Affirmed.*

DE GRAFF, C. J., and EVANS, STEVENS, FAVILLE, ALBERT, and MORLING, JJ., concur.