HORNICK, MORE & PORTERFIELD, Appellant, v.
FARMERS' & MERCHANTS' BANK, Respondent.

(227 N. W. 375.)

(File No. 6394.   Opinion filed November 8, 1929.)

*Crawford & Crawford,* of Huron, for Appellant.

*McCoy & McCoy* and *Gardner & Churchill,* all of Huron, for Respondent.

FULLER, C. On this appeal numerous assignments of error relate to the action of the trial court in sustaining objections of respondent to testimony offered by appellant. The excluded testimony was in the form of a deposition, and the answers which would have been given, except for the trial court's ruling, appear in the printed record. As a convenience to a consideration of the probative importance of the excluded proof we shall treat the same as admitted and view the facts as tentatively established according to appellant's version of the case. .

About November 1, 1925, the firm of Sherman & Moe, of Huron, forwarded to appellant, a corporation transacting business at Sioux City, a check for $800. The check was drawn by Sherman & Moe upon its account with the Farmers' & Merchants' Bank of Huron, the defendant and respondent herein. Receiving the check on November 2, 1925, at Sioux City, the plaintiff indorsed the same and delivered it to the Sioux National Bank of Sioux City for the specific purposes of collection and remittance of the item. The Sioux City bank indorsed the check and forwarded it by mail to the defendant bank at Huron for payment and remittance as aforesaid. It was the custom of banks, in the trade territory of plaintiff, which included the city of Huron, to make payment of such items, under similar conditions, by the issuance of draft. After receipt of the check, and on November 4, 1925, the defendant bank certified the same "paid," charged the account of

Sherman & Moe with $800, and credited its account, for the payment of cashier's checks, with a like sum. As a part of that transaction, the defendant issued and forwarded, to the Sioux National Bank of Sioux City, a cashier's check for $800. When the cashier's check was received by the Sioux National Bank, the agent of plaintiff for the purpose of collecting the original check of Sherman & Moe, the Sioux City bank advised the plaintiff that it had received the cashier's check, that it was unusual to receive collection in that form, and that it would return the check at once to Huron. It was then considered as most practical to return the cashier's check, for payment, through the Federal Reserve Bank of Minneapolis. This was done, but by the time of the return or presentment of the cashier's check to the Huron bank it had suspended operations. A few days later a reorganization of the Farmers' & Merchants' Bank of Huron was accomplished according to the provisions of chapter 104, Laws 1925. The reorganization was brought about by an agreement of the deposit creditors of the bank, representing more than 80 per cent of its total indebtedness; and proceedings were taken in the circuit court for the approval and confirmation of the reorganization in accordance with the reorganization law. The plaintiff, being a corporation nonresident of this state, did not participate in the reorganization agreement or in the court proceedings in relation to reorganization. According to the reorganization plan, creditors, such as the holders of cashier's checks, were obliged to receive, in lieu thereof, certificates of deposit in the reorganized bank for a certain percentage of their claims, and certificates of certain trustees, representing the balance of their claims, which certificates were payable from the ultimate liquidation of a part of the assets of the bank which were conveyed to the trustees as part of the plan of reorganization. Plaintiff refused to accept the certificates when the same were tendered, and commenced action by complaint which set forth the transaction above stated. The plaintiff asserts that by charging the $800 check to the account of Sherman & Moe the defendant bank received "the proceeds" of the check; that it retained the same for the purposes of "augmenting and swelling" its assets; that the assets turned over to the superintendent of banks included the aforementioned sum of $800; and that, when the bank reorganized, the same was "wrongfully assumed to belong to the assets of the

bank" and was redelivered into the possession and control of defendant. By clear inference and repeated specific allegation the complaint alleges a trust ex maleficio and appears to seek a return to plaintiff of trust funds wrongfully withheld by defendant. Virtually all of the assignments of error relate to the exclusion of testimony which, if admitted, would establish that the issuance of the cashier's check and the retention of the sum of $800 by defendants was wrongful and inconsistent with the known intention of plaintiff to have the Sherman & Moe check paid when it was presented.

The answer denies any trust relation between the parties or the existence of any trust fund. The answer alleges that plaintiff, by reason of the transaction pleaded, became a deposit creditor of the defendant bank; and the fact and procedure of reorganization is specially pleaded upon the theory that plaintiff was bound by the terms and conditions thereof. The defendant bank alleged that plaintiff had been duly tendered the certificates of deposit and the trustees' certificates, above mentioned, and the proffer was renewed in the answer.

Appellant, the plaintiff below, entirely failed in its attempt to prove facts essential to the establishment of the alleged trust. When the Sherman & Moe check was presented for payment at defendant bank, and the amount thereof was charged to the account of the drawer, the assets of the bank were in no sense augmented and increased. The Sherman & Moe account was debited $800, and account of cashier's checks for the day was credited a sum which included the amount of this item. It is the claim of plaintiff that, when plaintiff's check was presented to defendant bank, it should have received payment by means of customary draft or otherwise; and that, since the issuance of the cashier's check and the retention of the fund of $800 by defendant was wrongful, the plaintiff became equitably entitled to that fund. But no fund, in a sense of new and additional money, came into the control or possession of the bank in this case. A transaction with the bank by which the account of one depositor is charged for or debited with the amount of check and another account is given a corresponding credit does not augment or increase the assets of the bank, and does not bring into existence a fund of money to which a trust may attach. Beard v. Independent School District

(C. C. A.) 88 F. 375, 382; Empire State Surety Co. v. Carroll County (C. C. A. 8th Cir.) 194 F. 593, 606; Milligan v. First State Bank (S. D.) 226 N. W. 747.

■ Further, if it were to be assumed, with appellant, that the sum of $800, as distinguished from a mere bookkeeping credit, came into the possession and control of defendant bank as alleged, the plaintiff, attempting to establish its right of recovery as a cestui que trust, would have the affirmative burden of tracing the sum into a specific fund or property and of tracing and identifying that fund or property into the possession of defendant at the time of suit. The theory of all applicable trust cases is that title to the money, acquired from the claimant by the wrong or deception of the bank, did not pass to the bank; that the claimant is, in effect, recovering his own converted property or the proceeds thereof. Though the converted property may be identified to the point of its wrongful receipt by the bank, there can yet be no presumption that it remained in the bank's general assets to the time of suspension and that it passed to the hands of the bank's receiver or successor. The rules made applicable by the national courts to the proof and recovery of trust funds in the hands of receivers of national banks (Poweshiek County v. Merchants' National Bank [Iowa] 220 N. W. 63, 66), which is stated in Empire State Surety Co. v. Carroll County, supra, have been adopted in this state. Birch v. International State Bank, 50 S. D. 60, 62, 208 N. W. 167. The principles herein stated easily accord with the weight of authority and with the evolution of rules applicable to the tracing of trust funds into the hands of banks and of their receivers. See Pomeroy's Equity Jurisprudence, Notes, vol. 3, § 1048; 19 Harvard Law Review, 521; 27 Id. 125; Annotations to Macy v. Roedenbeck (C. C. A.) 227 F. 346, 347, L. R. A. 1916C, 21; Fiman v. State of South Dakota (C. C. A. 8th Cir.) 29 F.(2d) 776, 779.

Appellant also argues that the Huron bank was insolvent, and known to its officers to be insolvent, when its check was presented for payment, and that, for this reason, the proceeds of the Sherman & Moe check were received by the bank in fraud and became a trust. But whether the relation of trustee and cestui que trust is based upon one or another theory of fact is not material. The rules above stated apply in either event. The trust res must be

identified in the possession of defendant to justify a judgment for the recovery thereof.

■ A further answer exists to appellant's claim to the ownership of a fund held by the respondent bank in trust ex maleficio. When the cashier's check was received at Sioux City by appellant's agent, the Sioux National Bank, the appellant's officer conversed with officials of the Sioux City bank to the effect that the check was nót issued in accordance with the custom which required issuance of a draft by the Huron bank. But appellant did not refuse the cashier's check and cause it to be returned to the Huron bank. On the contrary, the cashier's check was indorsed by the Sioux City bank, the payee, and sent through the Federal Reserve Bank of Minneapolis for presentation to the Huron bank for payment. By such conduct of its agent, consistent only with rights of ownership in the cashier's check, appellant must be held estopped to deny its position in this case as the holder of the cashier's check.

■ Next to be considered is the effect of reorganization proceedings of the debtor bank upon the appellant—a nonresident creditor which neither consented to nor participated in the reorganization proceedings. In the case of Farmers' & Merchants' Bank v. Tomlinson, 54 S. D. 185, 225 N. W. 305, and in Smith v. Texley, 54 S. D. 190, 225 N. W. 307, this court held valid and constitutional chapter 104, Laws 1925, and to that end approved the decision of the Minnesota Supreme Court in Hoff v. First State Bank, 174 Minn. 36, 218 N. W. 238. But these cases were considered in the view of a creditor participating in the reorganization proceedings by objection and trial. By section 1, c. 104, Laws 1925, it is provided: "When any banking corporation organized under the laws of this state shall for any reason become suspended and be taken in charge by the Superintendent of Banks or by his Examiner in Charge or other liquidating agent pursuant to law, the said Superintendent of Banks may in his discretion permit the re-instatement of such bank as a solvent corporation by having a re-organization plan and articles of agreement executed in writing by deposit creditors thereof representing eighty per cent of the amount of deposits of such bank, to be determined as of the date of suspension, and all other depositors shall be held to be subject to such agreement and all and every term thereof to the same extent and with like effect as if they had joined in the execution

thereof, and their claims shall be treated in all respects as if they had joined in the execution of the articles of re-organization in the event the said bank is restored to solvency and re-opened for business."

According to the substance of the reorganization contract in this case, executed by the requisite number of deposit creditors, it was agreed that notes and securities of the face value of $258,344.66 should be purchased; that in consideration of such purchase the deposit creditors would assign to the bank 60 per cent of their respective claims; that the notes and securities thus purchased should be transferred to certain trustees for liquidation under the supervision of the superintendent of banks; that the remaining assets of the bank would be sold and conveyed to the reorganized bank and in consideration thereof the reorganized bank would issue its certificates of deposit, payable at stated times to each creditor in the amount of 40-per cent of his claim; and that the stockholders and directors of the bank should be discharged from all statutory liability to the bank and to its depositors and creditors. The contract contained a recital that the stockholders had already paid an assessment of 110 per cent upon their stock and were making payment of a further like assessment.

Upon the petition of the superintendent of banks, based upon this contract, an order of the circuit court issued requiring the depositors of the bank to show cause why the bank should not be reinstated as a solvent corporation under the reorganization plan and contract; and to show cause why "all other depositors should not be held subject to the terms of said agreement with the same effect as though they had joined in the execution thereof." The order also provided for notice thereof to be given the deposit creditors by publication of a copy of the order for one issue in a newspaper at Huron. On the return day, and over the objection of certain depositors, an order was entered providing that the depositors "and, all of them" had failed to show cause why the bank should not be reinstated as a solvent corporation "in accordance with the terms and conditions of the reorganization plan"; and the action of the superintendent of banks in permitting reinstatement of the bank was approved. It seems to have been taken for granted in the proceedings below and arguments here that the effect of the reorganization statute and of the proceedings thereunder, if valid,

was to discharge the Farmers' & Merchants' Bank from all liability of its former debts and obligations and we shall proceed in harmony with that assumption. Although there is no contractual or judicial statement of the fact of such discharge, the same effect seems to be attained by compelling the creditor to accept, in exchange for his claim, the certificates of the liquidating trustees and certificates of deposit in the bank.

Appellant contends that the Bank Reorganization Law above quoted is void as an impairment of the obligation of appellant's contract with the bank, and that neither the statute nor proceedings thereunder may adversely affect the rights of appellant as a non-resident of the state. The applicable rule is stated in Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606, 659, as reconsidered and confirmed in Cook v. Moffat, 5 How. 295, 12 L. Ed. 159, 166, as follows: "1st. That the power given to the United States to pass bankrupt laws is not exclusive. 2d. That the fair and ordinary exercise of that power by the states does not necessarily involve a violation of the obligation of contracts, multo fortiori, of posterior contracts. 3d. But when, in the exercise of that power, the states pass beyond their own limits, and the rights of their own citizens, and act upon the rights of citizens of other states, there arises a conflict of sovereign power, and a collision with the judicial powers granted to the United States, which renders the exercise of such a power incompatible with the rights of other states, and with the constitution of the United States.".

The cashier's check in this case was delivered appellant at Sioux City, Iowa, and was payable at respondent's banking house in Huron. However, the rule of Ogden v. Saunders above stated does not depend upon the laws of the place where the contract is made or where it is to be performed. The rule is predicated upon the fact of citizenship or residence of the creditor and debtor in different sovereign states. See discussion in Felch v. Bugbee, 48 Me. 9, 77 Am. Dec. 203, 207. The case of Ogden v. Saunders has been repeatedly followed, and its effect now finds expression as in Hawley v. Hunt, 27 Iowa, 303, 1 Am. Rep. 273, 274, as follows: "The settled doctrine now is, that a debt attends the person of the creditor, no matter in what State the debt originated or is made payable; that a creditor cannot be compelled by a State, of which he is not a citizen or resident, to become a party to insolvent

proceedings therein; that such proceedings are judicial in their nature, so that jurisdiction over the person of the creditor is essential; that notice is requisite to jurisdiction in such cases, and can no more be given in insolvent proceedings than in personal actions, where the party to be notified resides out of the state, and hence a discharge under a State insolvent law will not and cannot discharge a debt due to a citizen of another State, unless the latter appears and voluntarily submits to the jurisdiction of the court by becoming a party to the proceeding, or claiming a dividend thereunder." See, also, Bedell v. Scruton, 54 Vt. 493, 494; Pullen v. Hillman, 84 Me. 129, 24 A. 795, 30 Am. St. Rep. 340, 341, 342; Swift v. Winchester, 96 Me. 480, 52 A. 1017, 90 Am. St. Rep. 414; Annotation 94 Am. St. Rep. 555; Lowenberg v. Levine, 93 Cal. 215, 28 P. 941, 16 L. R. A. 159, 160; 1 Cooley's Const. Lim. (8th Ed.) p. 601.

Although the foregoing and numerous like decisions are all based upon the case of Ogden v. Saunders, supra, it is worthy of remark that the principle stated does not derive from the rule that Congress alone may establish uniform laws on the subject of bankruptcies which may have the effect of the discharge of insolvent debtors—a rule often expressed as in International Shoe Co. v. Pinkus, 278 U. S. 261, 49 S. Ct. 108, 73 L. Ed. 318. Indeed, by express provision of the Bankruptcy Act (section 4 [11 USCA § 22]) the same is without any application to a banking corporation. It is the part of the quotation from Ogden v. Saunders, supra, which alludes to the powers of states to act adversely upon the rights of citizens of other states that forms the basis for the rule here followed.

We are cited by respondent to the case of Canada Southern R. Co. v. Gebhard, 109 U. S. 527, 3 S. Ct. 363, 27 L. Ed. 1020. Acknowledgedly that decision appears to be a contradiction of the rule stated in Ogden v. Saunders, supra, as observed by Justice Harlan in a dissenting opinion (109 U. S. 540, 3 S. Ct. 372, 27 L. Ed. 1027), but, in Second Russian Ins. Co. v. Miller, 268 U. S. 552, 45 S. Ct. 593, 69 L. Ed. 1088, 1092, we find that the United States Supreme Court has placed its own restricted construction on its previous decision in a manner sufficient to render the previous decision without interest in this case.

Respondent also calls attention to language appearing in Denny v. Bennett, 128 U. S. 489, 9 S. Ct. 134, 32 L. Ed. 491, 494. It is

contended as an inference from such cases that the nonresident creditor may be said to be unaffected by the insolvency proceedings of the debtor only in the courts of the United States or of states other than that where the insolvency proceedings are had; that, when the nonresident creditor appears in the courts of the domicile of the insolvent debtor, he is bound by the discharge of the debtor accomplished by the insolvency proceedings. A careful investigation of all applicable authority leads to our certainty that no such result has been judicially contemplated, and that the decisions above cited refute respondent's argument. It follows that appellant is not bound by the terms and conditions of the reorganization of the Farmers' & Merchants' Bank, and that the judgment below should be reversed."

Inasmuch as the Farmers' & Merchants' Bank, respondent, reorganized and reinstated as solvent, is the same corporate entity which became indebted to the appellant upon the cashier's check (Farmers' & Merchants' Bank v. Tomlinson, 55 S. D. 185, 225 N. W. 305), it follows that appellant is entitled to recover the amount of its debt and interest at the lawful rate.

Whether the appellant was a deposit creditor of respondent bank, and belonged to the only class of creditors which the reorganization law (Laws 1925, c. 104) purports upon its face to affect or bind, is a question of no matter in the sense of this decision and upon which we have not intended to pass, although respondent insists by pleading and argument that the appellant is such deposit creditor.

The judgment and order appealed from are reversed, and the case remanded for proceedings consistent herewith.

SHERWOOD, P. J., and CAMPBELL, BURCH, and BROWN, JJ., concur.

POLLEY, J. I concur in the reversal of the judgment appealed from, and think the trial court should be directed to enter judgment for plaintiff as prayed for in plaintiff's complaint.