On and for some time prior to the 12th day of September, 1931, the First National Bank Trust Company, to be *Page 381 
hereinafter referred to as the First National, the People's Savings Bank, to be hereinafter referred to as Savings Bank, and the First Citizen's National Bank, to be hereinafter referred to as the Citizens' National, were all banking concerns doing business in Watertown. Some time about the year 1924, the said banks organized what was known as the Watertown Clearing House Association, of which each of the said banks was a member, and the officers of said association were made up of the officers and employees of the member banks. Said association was organized for the purpose of acting as a clearing house for the said banks, and it was their agreement and practice that each of said banks would perform the duties of clearing house manager for a period of four months during each calendar year.
On the 12th day of September, 1931, and while the Savings Bank was acting as manager of the clearing house association, the officers and employees of the said banks met at the said Savings Bank for the purpose of clearing their checks and other obligations for that day. The clearance was made, and the balances struck as between the three banks. The final balances showed that the Citizens' National was indebted to the First National in the sum of $4,941.53, and for the purpose of paying said balance, and in accordance with the rules and practice of the association, the Citizen's National gave to the Savings Bank, as clearing house manager, a draft for that amount on the First National Bank of Minneapolis. As a result of this transaction the Savings Bank became indebted to the First National for said amount of $4,941.53. As between the Savings Bank and the First National, plaintiff herein, the balance sheet showed that the Savings Bank owed the First National $1,385.72. This brought the total amount due from the Savings Bank to the First National up to $6,327.25. For the purpose of paying the First National this total balance due to it on said clearance, the Savings Bank gave to the First National a draft on the Midland National Bank 
Trust Company of Minneapolis for the sum of $6,327.25, the total amount as above shown. This draft was received by the First National, indorsed by it, and forwarded to the First National Bank of Minneapolis.
On the 14th day of September, 1931, and before the said $6,327.25 draft had been paid, the Savings Bank went into liquidation, and, when the said draft was presented to the Midland National *Page 382 
Bank, payment thereon was refused, and the draft was returned to the plaintiff unpaid. Plaintiff, claiming it should be a preferred creditor of the Savings Bank, filed a claim with the superintendent of banks for the amount of said draft as a preferred creditor. The superintendent of banks refused to allow the said claim as a preferred claim, but did allow it as a common claim against the assets of said Savings Bank. The said draft for $4,941.53 that was given to the Savings Bank by the Citizens' National was deposited with the said Midland National Bank of Minneapolis to the credit of said Savings Bank, and the proceeds thereof went into and became a part of the assets of said Savings Bank.
When the superintendent of banks refused to allow the claim as a preferred claim, plaintiff commenced this action for the purpose of establishing a preference over the common creditors.
After the said clearing house association was organized, certain articles of association for the government of the transactions of said association were adopted. Such articles of association contain the following provision: "When the clearing house clerks from the several member banks shall report with their respective demands, separately made out against each member in detail and the totals summed up. * * * The manager shall issue his checks or warrants upon the debtor banks in favor of creditor banks for the balances."
And said articles of association contained this further provision: "That settlements be made by paying to the managing officer, either Twin City draft or cash, the difference if a debit balance, and if a credit balance the managing officer can pay the individual bank."
When the case was called for trial, the parties hereto entered into and filed a stipulation of facts which, among other things, contains the following agreement by the members of the clearing house association: "That said clearing house association * * * took over and handled the clearings of the members thereof under agreement and understanding to promptly pay to such member such balance due on such clearings each day, out of and from the funds obtained and received from the checks, drafts and clearances so obtained in such exchanges, and to pay the balance due such member *Page 383 
of the association promptly from such funds each day, as such balance might appear."
The case was tried to the court. Findings of fact, conclusions of law, and judgment were for defendants, and plaintiff appeals.
The trial court found as a fact that the officers or employees of the three members of the association met at the Savings Bank on the 12th day of September, 1931, and made their clearings; that when the balance was struck it was found that the sum of $6,327.25 was due the First National from the Savings Bank; and that:
"* * * Pursuant to the agreement between the said three banks, its draft drawn on the Midland National Bank and Trust Company of Minneapolis, Minnesota, dated September 12th, 1931, and that said draft for said sum of $6327.25 was delivered by the Peoples Savings Bank to The First National Bank and Trust Company and accepted by it, and was on the day of the date thereof endorsed by The First National Bank and Trust Company and mailed to its correspondent bank in the City of Minneapolis, Minnesota, for collection, and on the 14th day of September A.D., 1931, when said draft was presented for payment at the banking house of the Midland National Bank and Trust Company of Minnapolis, Minnesota, upon which said draft was drawn, the Peoples Savings Bank of Watertown, South Dakota, had a balance to its credit in the Midland National Bank and Trust Company of Minneapolis, Minnesota, more than sufficient to pay that draft, but that the payment thereof was refused by the said Midland National Bank and Trust Company of Minneapolis, Minnesota.
"That in carrying out the actual clearance between the said three banks, The Citizens National Bank and Trust Company delivered to the Peoples Savings Bank its draft for $4941.53, the net amount due from the said, The Citizens National Bank and Trust Company after balancing the clearings with both the First National Bank and Trust Company and the Peoples Savings Bank, which said draft was drawn on The First National Bank of Minneapolis, Minnesota, which draft was accepted by the Peoples Saving Bank pursuant to the agreement between said banks, as hereinbefore set out, and which draft was duly endorsed by the Peoples Savings Bank and sent to the Midland National Bank and Trust *Page 384 
Company of Minneapolis, Minnesota, for collection and clearance, and was collected by said last named bank and deposited therein to the credit of the Peoples Savings Bank of Watertown, South Dakota."
Plaintiff claims that these findings do not correctly state the facts as the same are contained in the said stipulation; that so far as the draft for $4,941.53 is concerned, the defendant was bound to turn the proceeds thereof and the proceeds of other drafts, together with other clearances against it as an individual bank over to the plaintiff; that it should be accounted to and paid by it to the plaintiff; that plaintiff was entitled to "prompt payment" in "proper funds." We fail to see the materiality of these various claims. It is nowhere contended that these balances were payable in cash, and it would not be material if they were. Plaintiff had a right to waive payment in cash and take anything that was acceptable to it, and when it accepted and indorsed the draft for $6,327.25 it waived payment in any other way. It is true, as claimed by plaintiff, that its money represented by the $4,941.53 draft given to the Savings Bank by the Citizens' National went into and augmented the assets of the Savings Bank to that extent. But this is exactly what happens in every case where a person buys a draft from a bank and pays cash for it and the draft is never paid.
Appellant contends that when the Savings Bank received the draft for $4,941.53, it took the same as agent and trustee for plaintiff, and that said sum became impressed with a trust in favor of plaintiff. Whether this is correct as a proposition of law it is not necessary to determine. Of course, plaintiff was entitled to this money, and but for the rules of the clearing house association would have been entitled to demand it in cash; but, by accepting the draft, it waived its right to demand cash. When the draft was returned to plaintiff unpaid, it then had recourse on the Savings Bank, and had that bank continued as a going concern plaintiff could have enforced payment against it, but the instant the bank suspended business, its assets became a trust fund for the payment of its creditors, and the plaintiff and all other creditors must be treated alike, unless facts or circumstances exist entitling it to a preference. We find no circumstances in the record that we think entitles plaintiff to a preference. The situation is not different *Page 385 
from any other case where a person purchases a draft from a bank. If the bank suspends and the draft is not paid, the holder of the draft becomes a creditor of the suspended bank and will share pro rata with the other creditors. Hornick et al v. Bank, 56 S.D. 18, 227 N.W. 375, 82 A.L.R. 16; Leach v. Bank, 203 Iowa 790,211 N.W. 516; Milne v. Veigel, 170 Minn. 66, 211 N.W. 954; State ex rel v. Bank et al, 122 Neb. 109, 239 N.W. 646.
It is our opinion that the relationship between plaintiff and the People's Savings Bank was that of debtor and creditor only, and that plaintiff is not entitled to a preference.
The judgment appealed from is affirmed.
All Judges concur.